J. D. KING, Respondent, v. NATIONAL OIL COM-
PANY, Appellant.

Kansas City Court of Appeals, May 8, 1899.*

1. **Negligence:** INDEPENDENT CONTRACTOR: CARE. Where a wagon maker conducting an independent business undertakes under contract to repair the wagons of an oil company, he is an independent contractor, and the oil company owes him the duty to exercise ordinary care in regard to the condition of the wagons offered for repair and to notify him of such defects therein as are likely to result in injury during the process of repairing.

2. ———: ———: ———: NOTICE. Ordinary care must always be determined with reference to the dangers reasonably to be apprehended; and where the dangerous quality of a thing is not common to its species, persons offering it to another as a bailee should give warning of such dangerous qualities.

*This case did not reach the reporter until February 21, 1900.

2. ———:  CONTRIBUTORY  NEGLIGENCE:  NOTICE:  PARTNERSHIP. An oil company sending its wagon to a repairing firm for repairs notified the agent in charge of the shop, who in turn notified one of the partners, that the tank ought to be washed out before work was commenced. Such partner failed to notify his copartner who did the work and was injured by the explosion of vaporized oil from the tank. Held the injured partner had notice of the dangerous condition of the tank and that the proximate cause was the negligence in undertaking the repairs which precludes a recovery.

### ON MOTION FOR REHEARING.

4. ———:  NOTICE:  PARTNERSHIP:  INSTRUCTION.  There is a distinction between notice to the plaintiff and notice to his partner; and if the defendant wishes to charge the plaintiff with notice to the partner, he should so frame his instruction.

5. ———: ———: ———: ———. One partner can not be held to have all the knowledge on scientific questions the other partner may have, and an instruction should not so attempt.

6. ———: ———: INSTRUCTION. An instruction requiring an oil company not only to notify a repairing artisan that the tank offered for repair contained gas but how he could get it out, is faulty. The defendant's duty ceased in giving notice of the presence of the gas and plaintiff was bound to know the danger.

Appeal from the Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

REVERSED AND REMANDED.

*I. J. Ringolsky* and *W. C. Forsee* for appellant.

(1) Plaintiff's evidence shows that he was guilty of such negligence as precludes recovery. There was nothing in appellant's evidence to aid him. Hicks v. Railway, 46 Mo. App. 304; 2 Shearm. & Red. on Neg., sec. 690; 1 Thomp. on Neg., p. 110, sec. 11; p. 231, sec. 1; Whart. on Neg., secs. 324, 384; 2 Thomp. on Neg., pp. 1211, 1238, 1152; Callahan v. Warne, 40 Mo. 131; Conroy v. Iron Works, 62 Mo. 35; Butz v. Cavanaugh, 137 Mo. 503; Fletcher v. Railway, 64 Mo. 484; Bell v. Railway, 72 Mo. 50; Henry v. Railway, 76 Mo. 288; Powell v. Railway, 76 Mo. 83; Lanigan v. Gas Light Co., 71 N. Y. 29; Oil City G. Co. v. Robinson, 99 Pa.

St. 1.    (2)    One can not close his eyes to obvious danger, and can not recover damages for an injury growing out of and caused by his own recklessness.    1 Shearm. & Red. on Neg., sec. 217; Beach on Contrib. Neg., sec. 12; Whittaker's Smith on Neg., pp. 484, 479; Hicks v. Railway, 46 Mo. App. 304; Dale v. Railway, 63 Mo. 455, 459; Hudson v. Railway, 101 Mo. 13; Waldhier v. Railway, 87 Mo. 46, 47; Warmington v. Railway, 46 Mo. App. 160; Railway v. Everett, 152 U. S. 107; Stubbs v. Oil Mills, 92 Ga. 495; Railway v. Emmert, 83 Va. 640; Railway v. Kiziah, 86 Tex. 81.    (3) When plaintiff saw the gasoline dripping from the tank, it was due notice of the dangerous condition of the tank.    He could not, therefore, plead ignorance of the danger. 1 Shearm. & Red. on Neg., sec. 217; 2 Shearm. & Red. on Neg., sec. 690; 2 Thomp. on Neg., pp. 1015, 1016; Wade on Notice, sec. 11; Porter v. Railway, 71 Mo. 66; Fisher v. Golladay, 38 Mo. App. 542; Fairmount Co. v. Davis, 4 Col. App. 570; Davis v. Detroit Railway, 20 Mich. 105; Roddy v. Railway, 104 Mo. 234; Guinard v. Knapp Co., 90 Wis. 123; Fordyce v. Edwards, 60 Ark. 438; Flood v. Tel. Co., 131 N. Y. 603; Railway v. Somers, 71 Tex. 700; Reed v. Gannon, 50 N. Y. 349; Zinc Co. v. Martin, 93 Va. 791; Mandle v. Wheeler, 59 Ill. App. 459; Lanigan v. Gas Co., 71 N. Y. 29; Curvan v. Warren Co., 36 N. Y. 153; Dawney v. Pence, 98 Ky. 261; Gas Co. v. Robinson, 99 Pa. St. 1; Brown v. Gas Co., Anth. N. P. (N. Y.) Cas., 351; Burrows v. Gas. Co., 5 Ex. 67; L. R. 7 Ex.; Bartlett v. Gas. Co., 117 Mass. 533; s. c. 122 Mass. 209; Lehman v. Van Nostrand, 165 Mass. 233; Pickett v. Railway, 117 N. C. 616; Hally v. Gas. Co., 8 Gray, 123; Savage v. Gas Co., 4 Gas Journal, 136; Oil Co., 75 Hun. 209; Hunt v. Gas Co., 1 Allen (Mass.) 343; Oil Co. v. Tierney, 92 Ky. —; Pine Bluff W. & L. Co. v. Schneider, 34 S. W. Rep. 547.    (4)    Plaintiff's act in putting a red-hot rivet into close contact with a tank which he knew contained gasoline was the proximate cause of his injury.

Defendant's negligence, if any, was remote. Callahan v. Warne, 40 Mo. 139; Harlan v. Railway, 65 Mo. 22; Butz v. Cavanaugh, 137 Mo. 503; Hicks v. Railway, 46 Mo. App. 304; Shearm. & Red. on Neg., secs. 25, 40, 57; Whart. on Neg., secs. 3, 73, 97; Bishop's Non-contract Law, secs. 40, 455; Cooley on Torts, 68, 69, 71; Broom's Leg. Max. [2 Ed.], 165; Pickett v. Wilmington, 117 N. C. 616; 2 Thomp. on Neg., pp. 1227-1235; Shearm & Red. on Neg. sec. 59; Cooley on Torts, 796 et seq.; Addison on Torts, 17, 366, Whittaker's Smith on Neg., 287. (5) The relations of the parties here were those of bailor and bailee, in which ordinary care on each side is required. Schouler on Bail., sec. 15; Goodrich v. Railway, 97 Iowa, 521; Railway v. Barrett, 166 U. S. 617; Culbertson v. Holliday, 50 Neb. 229; Railway v. Everett, 152 U. S. 107; Stubbs v. Oil Mills, 92 Ga. 495; Railway v. Emmert, 83 Va. 640; Railway v. Kiziah, 86 Tex. 81; Whittaker's Smith on Neg., pp. 287, 484. (6) The knowledge and notice that Grimes had of the dangerous character of gasoline and its vapor is chargeable to plaintiff. They were copartners. The tank was sent to the firm for repairs. Any negligence upon the part of any member or employee of the firm is imputable to plaintiff. Whittaker's Smith on Neg., p. 505, 506; Shearm. & Red. on Neg., sec. 46, 66, 65; 1 Thomp. on Neg., p. 110, sec. 11; Stillson v. Railway, 67 Mo. 671; Platz v. City of Cahoes, 24 Hun. 161; Dutzi v. Geisel, 23 Mo. App. 676, 683; Bartlett v. Gas. Co., 117 Mass. 533; s. c., 122 Mass. 209; Holly v. Boston G. L. Co., 8 Gray 123; Mann v. Weiand, 81 1-2 Pa. St. 243. (7) There is no substantial conflict in any of the evidence upon any material point in the case. Whether plaintiff was entitled to recover was and is, therefore, purely a question of law. It can not be said, upon this record, that any question of fact was found against appellant. Every material fact stands undisputed of record. Fletcher v. Railway, 64 Mo. 488; Bell v. Railway, 72 Mo. 50; Henry v. Railway, 76 Mo. 288; Powell v. Rail-

way, 76 Mo. 83; Norton v. Ittner, 56 Mo. 351; 2 Thomp. on Neg., pp. 1179, 1238, secs. 12, 1149, 1173; 2 Thomp. on Trials, secs. 1674, 1675, 1680.

*Wm. P. Borland* for respondent.

(1) The law does not require one to search for hidden dangers, and the presence of an invisible gas in tank apparently empty and turned upside down with a hole in the bottom, was a hidden danger. (2) The presence of gas in the tank was not an inherent defect or something necessarily accompanying the work, which had to be guarded against. It need not have been there and was there only by the negligence of appellant. Larson v. Mining Co., 71 Mo. App. 518; Pinney v. Railway, 71 Mo. App. 581; 1 Thomp. on Neg., p. 231. (3) Plaintiff was not required to anticipate defendant's negligence. He had a right to assume that a tank sent to be repaired was in a safe condition to be repaired. Schultze v. Railway, 32 Mo. App. 438; Fisher v. Golladay, 38 Mo. App. 542. Even express knowledge of a danger is not contributory negligence *per se*. It is to be submitted to the jury under proper instructions. Chilton v. St. Joseph, 143 Mo. 192; Graney v. St. Louis, 141 Mo. 180. (4) Carelessly leaving gasoline gas in the tank was the proximate cause of the explosion. "The proximate cause is such that the injury must be its natural and probable consequence, and as such might and ought to have been foreseen." Bradford v. Railway, 64 Mo. App. 475. (5) There were material conflicts in the evidence so that the questions of negligence and contributory negligence were both properly submitted to the jury. Schultze v. Railway, 32 Mo. App. 438; Freeman v. Pratt, 66 Mo. App. 283; Young v. Railway, 72 Mo. App. 270. (6) But even where the facts are undisputed the court will not always assume the burden of drawing the inference from those facts Roddy v. Railway, 104 Mo. 234; Berry v. Railway, 124 Mo. 245; Larson v. Mining Co., 71

Mo. App. 512, 518; Wentworth v. Duffy, 68 Mo. App. 513; Threlkeld v. Railway, 69 Mo. App. 131; 2 Thomp. Neg., p. 1238, sec. 12. (7) The testimony of appellant's witness, Grimes, to any knowledge he had of gasoline gas or any warning he had received, even if believed by the jury, would not bind plaintiff, where the issue was contributory negligence. Munger v. Sedalia, 66 Mo. App. 629; Platz v. City of Cahoes, 24 Hun. 101.

SMITH, P. J.—Action to recover damages for injuries received by plaintiff in consequence of the negligence of the defendant.

The petition alleges the cause of action in this way: That is to say, that the defendant, a business corporation, was engaged in selling gasoline, and the plaintiff, a wagon maker and repairer, kept a shop in which he carried on his trade as such; defendant sent a gasoline tank wagon to plaintiff's shop to be repaired and to have a flange riveted on the same; that said gasoline tank wagon was then in a dangerous, improper and unsafe condition to be repaired in this: That said wagon was filled with an accumulation of gasoline gas; that defendant knew that said wagon was in such condition, and had negligently, carelessly and recklessly allowed said wagon to remain in said condition and had failed and neglected to empty or drive out said gas before sending it to be repaired; that this plaintiff had no notice or knowledge of the dangerous condition of said wagon. That while plaintiff was repairing said wagon in a proper and careful manner, and while he was attempting to put a red-hot rivet through the flange and tank of said wagon, the gas, so negligently allowed to remain in said wagon by defendant, took fire and exploded with terrific force and the flames of said burning gas shot out and burned this plaintiff's head, hands, arms and face, and inflicted on him serious and grievous injuries.

The defendant's answer was a general denial. The plaintiff had judgment in the trial court and defendant appealed.

The trial court denied a demurrer interposed by defendant to the evidence adduced by plaintiff, and therefore it devolves upon us to determine whether the plaintiff made out a *prima facie* case entitling him to go to the jury. The questions arising on the demurrer are (1), whether or not the defendant owed the plaintiff any duty, and, (2), if so, does the evidence fail to disclose any such breach thereof as entitled the plaintiff to recover indemnity for his injury?

At the time of the plaintiff's injury, it appears that he was engaged in performing a contract previously entered into between the firm of King & Grimes, of which he was a member, and the defendant, for the doing of certain work on one of defendant's gasoline tank wagons. The firm was engaged in an independent business and, as such, undertook to do the work specified in their contract, using their own means and methods, without submitting themselves to the control of defendant, in respect to all of its details. The firm represented the will of the defendant only as to the result of the work, and not as to the means by which it was accomplished. It was, therefore, an independent contractor with the defendant. Shearm. & Red. on Neg., sec. 164. The relation of the defendant to the firm was not that of master and servant; and therefore there is little to be found in the principles of the law governing that relation to guide us in our present inquiry.

The principle enunciated by the master of the rolls in Heaven v. Pender, 11 Q. B. D. 506, seems to be that, if a reasonable man must see that he did not use care in the circumstances he might cause injury to the person or property of another, a duty arises to use such care. It was said in that case, that whenever one person supplies goods, machinery or the like, for the purposes of then being used by another person under such circumstances that every one of ordinary sense would, if he thought, recognize at once, that, unless he used

VOL. 81 app—11

ordinary care and skill with regard to the condition of the thing supplied, or the mode of supplying it, there will be danger of injury to the person or property of him for whose use the thing is supplied, and who is to use it, a duty arises to use ordinary care and skill in the manner of supplying such thing. The plaintiff's evidence tends to prove that at the time the defendant sent its wagons to the firm to be repaired, the tanks thereon contained considerable quantities of vaporized gasoline, which, if brought in contact with hot metal or fire, would explode. If the defendant knew of the dangerous condition of the tanks at the time it sent the same to the firm for repairs, then there arose a duty on the part of the defendant to notify the plaintiff of the same so that he might take the proper precautions against the danger of injury incident to making the required repairs thereon.

But, however this may be, it is conceded in the brief of the defendant's counsel that the legal relation existing between the defendant and the firm was that of bailor and bailee, and that the duty thereby imposed on each of them, in respect to the transaction between them, was that of ordinary care. Assuming then, as we must, that the measure of duty which the defendant owed the firm was that of ordinary care, it becomes next important to inquire, what is ordinary care?

Any one who puts in the charge of another as carrier, depositary, or otherwise, anything which he knows to be of a dangerous nature, liable to injure other goods by explosion, combustion, leakage or the like, is bound to give the person with whom such things are deposited reasonable notice of the danger; if the thing is an ordinary article of merchandise, the qualities of which are generally known, such as gun-powder, nitroglycerine, etc., a simple disclosure of the name of the article is sufficient notice of its nature, but if the dangerous qualities of the thing are not common to its species, further warning is necessary. Thus, while in shipping a tiger no

warning could be required; but if a vicious horse, disposed to kick and bite, then there ought to be a warning given if the shipper had knowledge of its vicious propensities. Shearm. & Red. on Negligence, sec. 690. Ordinary care must always be determined with reference to the dangers to be reasonablly apprehended. It must depend upon the facts and circumstances of each case. It is often an essential part of that care to guard against such occurrences as persons of ordinary prudence would reasonably anticipate in a given situation. Fuchs v. St. Louis, 133 Mo. 168; Bowen v. Railway, 95 Mo. 268. If the defendant sent its wagon to the shop of the firm for repairs, when it knew that the tanks thereon were charged with vaporized gasoline, then it must have reasonably anticipated the danger of an explosion if, in making such repairs, hot rivets should be used; and especially so since there is some evidence tending to show that the defendant's superintendent suggested to the firm that in making the repairs that it use hot rivets.

The plaintiff's evidence tended further to show that the presence of the vaporized gasoline in the tanks could not be discovered by ordinary inspection; that the liquid gasoline had been drawn therefrom; that there was nothing about the physical appearance of the tanks to suggest the presence therein of the vaporized gasoline. In such circumstances, it would seem to be the duty of the defendant to notify the firm of its presence there and the danger to be anticipated in making the repairs in the way it had suggested. A failure to do this would be a neglect of the performance of the duty it owed to the firm. But the evidence of the plaintiff does not tend to show directly or inferentially that the defendant, at the time it sent the tanks to the firm, knew the same contained vaporized gasoline in a quantity sufficient to make it unsafe or dangerous to repair the same with hot rivets. Evidence of this fact was wholly wanting, and for this reason the defendant's demurrer should have been sustained by the trial court. And

had the defendant stood on its demurrer, instead of introducing evidence in its own behalf which supplied the defect in the plaintiff's proof, we should feel called upon to declare the action of the court on the demurrer reversible error.

The defendant's evidence tended to prove that it did have knowledge of the dangerous condition of the tanks at the time it delivered the same to the firm for repair. This sufficiently appears from the testimony of its superintendent and driver who delivered the tanks. The defendant, by the introduction of evidence, aided the plaintiff in making out his *prima facie* right of recovery. It is now in no position to complain of the action of the court in denying its demurrer to the plaintiff's evidence.

But the defendant contends that the court erred in refusing at the conclusion of all the evidence to give the jury a peremptory instruction to find for it. It appears from the undisputed evidence that the defendant's driver, at the time he delivered the wagon at the shop of the firm, stated to Dan Speers, who was an employee of the firm then in charge of its shop, the members of the firm then being absent, that it might be well to wash the tanks out. It seems that when both members of the firm returned to the shop, Speers communicated to Grimes the suggestion that had been made by the defendant's driver. It may be fairly inferred that both Speers and Grimes understood the significance of the suggestion of the defendant's driver; that is to say, that it was unsafe to proceed with the work of making the repairs without first washing out the tanks—for, otherwise, why did they so carefully examine the inside of the tanks before undertaking to repair them? It further appears that they were unable by examination to discover the presence in the tanks of either liquid or vaporized gasoline, and for that reason disregarded the defendant's warning. If the firm received this notice it was ample warning of the condition of the tanks, and the consequent danger to be anticipated from the use of hot rivets in making the

repairs. It must be presumed to be within the knowledge of every man of ordinary intelligence that if fire or hot metal be applied to vaporized gasoline that rapid combustion or explosion will result. The tendency of the uncontradicted evidence of the defendant was to show that it gave the firm all the notice in respect to the dangerous condition of the tanks that could have reasonably been required under the circumstances.

But it is contended that as Grimes did not communicate to the plaintiff the notice which he had received as to the dangerous condition of the tanks, that therefore he was not in any way bound or affected by such notice. It was the duty of Speers, the servant of the firm, to communicate to it, as he did, the notice that had been given to him by the defendant's driver, (Shearm. & Red. on Neg., sec; 630), and it was also the duty of Grimes to communicate to the plaintiff, as his partner, the notice which had been received by him. Shearm. & Red. on Neg., secs. 68, 69. The plaintiff and Grimes were, at the time of the receipt by the latter of defendant's notice, a commercial firm. Notice given to one, in relation to the firm business, was notice to the other. Any member of such a firm is the general agent of the other in respect to the transaction of the firm business. Collyer on Part., secs. 412, 414, 443; Hill v. Ross, 3 Dall. 331. In Bates on Partnership, sections 389 and 390 it is stated: "Resulting from the agency of a partner it follows that notice to one member of a firm within the scope of the business, or reference to a partnership transaction, and which it is his duty to communicate to his copartner, if he is within reach and able to tell them, is notice to all. In such cases if he fail to notify the other partners they can not avail themselves of their grievances of the transaction of one of their number acting as their agent. And so knowledge of one partner is knowledge of all." If Grimes neglected to communicate to the plaintiff the fact that he had received defendant's notice of the dangerous condition

of the tanks in time to have enabled him to have avoided the injury, the latter would, no doubt, have an action against the former for a breach of duty. In that regard Grimes' knowledge was imputable to plaintiff. Shearm. & Red. on Neg., sec. 69, and cases there cited. So that we must conclude that the evidence of defendant tends to prove that the plaintiff was apprised by the defendant of the dangerous condition of the tanks at the time when the same were delivered to his firm for repair. This evidence is undisputed and uncontradicted.

The case, then, on the record stands in this way: The plaintiff by the aid of the defendant's evidence showed that the defendant knew of the dangerous condition of its gasoline wagon when the same was taken to the shop of King & Grimes for repairs. But this uncontradicted evidence of the defendant further shows that the plaintiff was in legal contemplation fully apprised of the dangerous condition of the wagon at the time he undertook the repair thereof which resulted in his injury. He then knew that the tank had not been washed out and of the presence therein of the vaporized gasoline. He as a man of ordinary intelligence is presumed to have known that the bringing of a red-hot rivet in contact with the vaporized gasoline would result in an explosion. To undertake repairs of the wagon under such conditions in the manner in which he did was the grossest negligence on his part.

The negligence of the defendant in sending the wagon in its dangerous condition to the shop was not the proximate but the remote cause of the injury. The immediate and proximate cause of the injury was the negligence of the plaintiff in undertaking the repairs in the way he did. This was such negligence as should preclude his right of recovery, as may be seen by reference to the numerous authorities cited in the defendant's brief.

But if this were all! it may be that under our ruling in Bank v. Hainline, 67 Mo. App. 483, we would not be author-

ized to disturb the verdict, but in this case the first instruction given for the plaintiff and the fourth given by the court on its own motion are at variance with the views which we have herein expressed respecting what constituted notice to plaintiff of the dangerous condition of the defendant's gasoline wagon at the time it was sent to the shop of King & Grimes. Either these instructions or some other should have declared that notice to Grimes was notice to King, if they were then commercial partners, as previously herein stated by us.

The defendant was not required, if we are right in our statement of the law, to prove that plaintiff had direct notice or knowledge of the dangerous condition of the defendant's wagon. It was sufficient to prove that Grimes, the other partner, had such prior notice or knowledge of the condition of the wagon at the time of the explosion and consequent injury. Evidence along these lines would have been pertinent to the issue and should have been admitted.

The judgment will accordingly be reversed and the cause remanded. All concur.

## ON MOTION FOR REHEARING.

ELLISON, J.—The record, in connection with the various arguments submitted on motion for rehearing, convinces me that we have had much urged here that was not brought to the attention of the trial court. We have now the point urged that since there was evidence tending to prove that plaintiff's partner was notified of the dangerous condition of the tank that this was notice to plaintiff. We think the defendant did not submit the case, or ask to have it submitted on such theory. He objected to plaintiff's first instruction, which puts the hypothesis of "plaintiff" having had notice without mentioning whether his partner had. But in so far as that was concerned it was not improper. If defendant wanted the jury to understand that notice to the partner was

notice to plaintiff it should have asked an instruction so stating and explaining it.   Browning v. Railway, 124 Mo. 55, 71.

It is said that defendant's fourth instruction, refused, submitted the question of the partner's having received notice and directed that it should be considered as notice to plaintiff. It does not by any means.   No reference to notice appears in that instruction.   It makes an awkward attempt to charge plaintiff with the general knowledge his partner might have of the explosive character of gasoline.   It must be apparent that it would be error to hold one partner to know all the other partner might know on scientific questions.   But, in any event, there is no reference in this to notice that the tank had not been cleaned and contained explosives.

I think, however, that plaintiff's first instruction is faulty in requiring defendant not only to notify plaintiff of the presence of the gas, but also of how he could get it out of the tank.   If plaintiff was notified of the presence of the danger, it was not incumbent on defendant to further tell or teach him how to avoid it.   So, also, as to another part of this instruction:   Considering that plaintiff was engaged in the business of repairing such tanks after they had been used in handling the dangerous explosive, it was requiring too much of defendant to require it to notify him that the vapors or gases which remained therein were dangerous.   That is something he knew, or ought to have known, for himself.

So therefore, while I think defendant is not in a position here to raise the question of notice as a criticism on the court's action in passing on the instructions, the errors just noticed ought to cause a reversal of the judgment and a remanding of the cause.   *Gill, J.,* concurs.