Robert FLETCHER, Plaintiff-Respondent,

v.

Howard KEMP, Defendant-Appellant.

No. 47174.

Supreme Court of Missouri,
Division No. 1.

July 13, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 14, 1959.

George F. Heege, Clayton, for appellant, John H. Martin, St. Louis, of counsel.

Cleo V. Barnhart and Barnhart & Sommers, St. Louis, for respondent.

HOUSER, Commissioner.

This is an action for damages for personal injuries, brought by Robert Fletcher against Howard Kemp. Trial by jury in the Circuit Court of St. Louis County resulted in a verdict for plaintiff for $15,000. From the ensuing judgment defendant perfected this appeal.

Plaintiff, an automobile mechanic, was seriously injured when a 55-gallon metal drum exploded in the automobile repair shop where plaintiff was employed. The shop and filling station in connection therewith were owned and formerly operated by defendant. Plaintiff had worked previously for defendant while defendant was operating the repair shop. At the time of the accident the premises were leased to Robert Martin, and plaintiff was working for and in the employ of Martin, who paid plaintiff's salary.

Defendant had several 55-gallon empty metal drums left over from the time he had operated the business. The drums had been stored in the back of the filling station for some time. Some of the drums had contained Zerone, an inflammable, explosive antifreeze mixture, and the others had contained various types of oil. Desiring to make a floating dock defendant brought four of these drums, including a Zerone drum, into the repair shop. Without asking Martin's permission to use the shop and tools (owned by defendant but leased to Martin) and without asking Fletcher's permission to use Fletcher's personally owned welding equipment, defendant "helped himself," "made himself at home," and started welding the bottom ends of two of the drums to each other. Defendant knew that one of the drums he had assembled had been a container for Zerone. The ends of Zerone drums were painted

blue. The centers were painted yellow. They were stamped "Zerone" on the middles and tops. The word "inflammable" was stamped on the very top. Defendant was familiar with Zerone. He had been "around Zerone" for twenty years. He knew it was inflammable and that it should not be used near a flame. The drums had not been washed out by defendant. Defendant knew that any drum with a cap or bung in it would explode if a welding torch was applied to it. Defendant assumed, and testified that "to his knowledge" the caps or bungs were out of the drums when he brought them into the shop, but defendant had not made any tests to determine whether the drums contained any residue of Zerone or other explosive or inflammable substance before he undertook to weld. On the morning of the accident plaintiff and his employer, Martin, were busy doing other work, but Martin from time to time assisted defendant "in some respects"; "helped him a little." That morning defendant had been sitting on the top of the drum that later exploded, a Zerone drum, straddling it while doing the welding. Plaintiff had observed defendant doing this. When plaintiff returned from lunch plaintiff's employer, Martin, told plaintiff to "finish the job"; to weld two angle irons onto the end of the drum. Plaintiff asked defendant if there was anything he could do for him and defendant said, "You're a better welder than I am, weld on this angle iron." Defendant told plaintiff where to put the piece of angle iron. Plaintiff said that he would, and undertook to do so. Using his welding torch, plaintiff "got a good heat up on" the end of the drum where he was going to weld the angle iron. There was an explosion, a terrific impact, which blew out the end of the drum on which plaintiff was welding, sending it more than a hundred feet through the air, taking half the hand torch plaintiff was using, and inflicting the injuries in question.

Plaintiff had been a welder and mechanic for many years. He knew a Zerone drum

when he saw one; knew that the "Inflammable" sign is on all Zerone drums; knew that Zerone is explosive; knew that in welding a Zerone drum it would explode if it got heat into it and it was "closed up." If the drum in question was brightly painted plaintiff did not take any particular notice. It did not occur to plaintiff to look, and he did not look, at the end of the drum in question to see whether the cap or bung had been taken out. It did not "register" with plaintiff whether the drum in question was a Zerone drum and plaintiff did not ask either Martin or defendant if the drum had been "washed out." All he knew was that it was a 55-gallon drum and that he had a welding job to do.

Defendant contends that the court erred in not sustaining defendant's motion for a directed verdict.

■ First, defendant contends that even under the most favorable construction of the testimony plaintiff was a volunteer or gratuitous licensee, to whom defendant owed only the duty not to wilfully or wantonly injure him; that neither the relationship of master and servant nor that of invitor and invitee existed as between plaintiff and defendant, so that defendant did not owe plaintiff the duty to exercise ordinary care. Defendant refers to the rule stated in 56 C.J.S. Master and Servant § 177, that "A person who voluntarily assumes to act as the servant of another cannot recover for personal injuries as a servant." There is a similar rule, not alone applicable in master and servant cases, that one engaged in work owes to another who assists him as a mere volunteer, without invitation and without a contractual relationship, no duty of ordinary care, and is not liable for injury received by such a volunteer, in the absence of wilful or wanton injury. 65 C.J.S. Negligence § 62. Considered in the light most favorable to plaintiff, the instant facts do not bring the case within the purview of either of these rules. Quite to the contrary, plaintiff was not a volunteer in any sense of the term.

Plaintiff was lawfully present at his regular place of employment, where he had a right to be. The welding was an operation within the scope of the duties of his employment. He did the work in what reasonably may have appeared to him to be in furtherance of the interests of his employer. He was invited by defendant, as well as directed by his employer, to assist defendant in the performance of the work. His undertaking the welding was not voluntary. It was not done of his own free will, unimpelled by another's influence, or without legal obligation. It was not the act of an intermeddling bystander. It was done by virtue of an order, in compliance with plaintiff's duty to obey the commands of his employer, and at the invitation of defendant, the beneficiary of the services to be rendered. Defendant directed him as to the particular welding to be done, i. e., the spot on the drum where the angle irons were to go. Accordingly, the case falls within the rule that a duty to exercise ordinary care is imposed upon one who invites another to assist in an operation. Saliba v. Saliba, 178 Ark. 250, 11 S.W.2d 774; 65 C.J.S. Negligence § 62. Other bases for the imposition upon defendant of the duty to exercise ordinary care will be developed in the course of this opinion. Oatman v. St. Louis Southwestern R. Co., 304 Mo. 38, 263 S.W. 139, cited by defendant, is not in point because there was no employment or request of plaintiff by any authorized agent or servant of the railroad company that plaintiff render the gratuitous assistance in the course of which he was injured. Defendant cites Wolfson v. Chelist, Mo.App., 278 S.W.2d 39, affirmed Mo.Sup., 284 S.W.2d 447, but we see no relation between that situation and this.

■ Second, defendant contends that plaintiff's evidence affirmatively shows that plaintiff assumed all risk incident to the welding operation. The doctrine of assumption of risk, a conventional defense in master and servant cases, is not invariably limited to that field of the law, and may extend to other cases in which the defense

is based upon the maxim volenti non fit injuria. Arnold v. May Department Stores Co., 337 Mo. 727, 85 S.W.2d 748; Dietz v. Magill, Mo.App., 104 S.W.2d 707. The rationale of the doctrine is that one who voluntarily exposes himself to a known and appreciated danger due to the negligence of another may not recover for an injury resulting from such exposure, even though the injured person may have been in the exercise of due care for his own safety at the time. Dietz v. Magill, supra; 65 C.J.S. Negligence § 174, pp. 849, 850. In order to invoke the doctrine of assumed risk, or "incurred risk" as it is sometimes called, Stein v. Battenfeld Oil & Grease Co., 327 Mo. 804, 39 S.W.2d 345, it is necessary that the exposure to risk shall have been *voluntary*. It has no application where the exposure results from facts, circumstances and surroundings which constitute a real inducement to expose one's self to the danger, as where the injured person surrenders his better judgment as a result of an assurance of safety. 65 C.J.S. Negligence § 174, p. 851. In the instant case the circumstances were such that reasonable minds might differ as to the voluntariness of plaintiff's exposure to risk. Earlier in the day plaintiff had seen defendant apply the same welding torch to the same drum, in an extensive welding operation, and had observed defendant sitting astraddle of the drum in the course of that work. There was no explosion after that application of heat. Plaintiff might reasonably have concluded from these circumstances that the drum had previously been cleansed of dangerous and inflammable residues; that by actual test the danger of combustion was nil and that it would be safe to do more of the same kind of work on the drum, without making an inspection. Since all reasonable minds would not come to a single conclusion on the voluntary character of plaintiff's exposure to the risk, it was a question for the jury and not for the court.

▬▬▬ Third, defendant argues that plaintiff was contributorily negligent as a

matter of law; that plaintiff, an experienced welder and mechanic, knew that Zerone was a dangerous, inflammable substance; that a drum containing Zerone, subjected to the intense heat of a welding torch, would explode; that plaintiff made no inspection or tests to determine if the drum contained a residue of Zerone, or if the caps or bungs were out, and "did nothing except to blindly grab his torch and apply it to the drum." Defendant cites several cases where injured persons have been declared guilty of contributory negligence as a matter of law. Dixon v. General Grocery Co., Mo.Sup., 293 S.W. 2d 415; Wilkins v. Allied Stores of Mo., Mo.Sup., 308 S.W.2d 623; Lindquist v. S. S. Kresge Co., 345 Mo. 849, 136 S.W. 2d 303; Murray v Ralph D'Oench Co., 347 Mo. 365, 147 S.W.2d 623. These cases do not sustain defendant's argument. They are cases involving open and obvious conditions as well known to plaintiff as to defendant. The condition which gave rise to the instant injury was not an open and obvious condition, known to plaintiff. The existence of the residue of Zerone inside the metal drum was a latent, hidden condition. True, plaintiff in a general way knew and appreciated the danger of subjecting a drum containing a residue of Zerone to intense heat. There is, however, no evidence that he knew that a residue of Zerone existed in this drum. While ordinarily he might be held to a duty of inspection to ascertain that fact before commencing work, plaintiff may not be held to that duty as a matter of law in this case because there are facts from which a jury might find a justification for his failure to inspect. One may not be guilty of contributory negligence in exposing his person to known and appreciated danger "where there is some reason of necessity or propriety to justify him in so doing." 65 C.J.S. Negligence § 121, p. 731. Plaintiff had a two-fold justification in this case: (1) the previous exposure of defendant's own person to the same danger earlier in the day, without casualty, a fact

personally observed by plaintiff, and (2) the fact that plaintiff's employer ordered him to do the work. Where an employee is specifically directed by his employer to do an act, he can rely on the master's judgment that it is safe, unless the danger is imminent, Wilson v. United .Rys. Co. of St. Louis, Mo.Sup., 181 S.W. 19, or so obvious or glaring that no reasonably prudent person in the exercise of ordinary care would undertake to do the work in such a manner. Stupp v. Fred J. Swaine Mfg. Co., Mo.Sup., 229 S.W.2d 681, and cases cited, 229 S.W.2d loc. cit. 686.

In McDonald v. Morrison Plumbing & Sheet Metal Co., 209 Mo.App. 23, 236 S.W. 418, a gasoline tank was brought to defendant's shop to be repaired so that it would not leak. Defendant's manager filled the tank with water, and then showed it to plaintiff, an experienced metal worker. When plaintiff examined the tank he saw that it had been filled with water. Defendant's manager told plaintiff that the tank was ready for him to repair and to do a good job. Defendant's manager saw plaintiff get his tools ready and take a blowtorch in hand. When plaintiff got to the tank he noticed that water in the tank had been emptied out. Plaintiff then went to work, applying a very hot heat to the outside of the tank so that it could be soldered. An explosion occurred, resulting in serious injuries to plaintiff. It was contended that plaintiff was contributorily negligent as a matter of law. The court rejected this contention, observing, 236 S.W. loc. cit. 419: "While the plaintiff may have been an experienced metal worker, and had done a great deal of this kind of work, when he received the instructions from his master that the tank was ready for repair, he had a right to rely on the assumption that it had been properly cleansed, and the danger which might arise from gasoline gas had been eliminated." In view of the double assurance of safety revealed in the instant case it cannot be said, as a matter of law, that the danger to plaintiff was imminent, obvious and so glaring that no reasonably

prudent person would have undertaken the work. It was debatable, and therefore a submissible question.

■ Defendant's next point is that it was error to give Instruction No. 1, because it was not supported by the evidence. Instruction No. 1 directed a verdict for plaintiff upon a finding that one of the drums defendant was using in the construction of a floating dock had formerly been a bulk container for Zerone, an inflammable liquid antifreeze mixture; "That the residue, if any, of Zerone remaining in said drum had not been previously washed out of said drum"; that defendant made no inspection to determine whether the drum contained a residue of Zerone; that in the exercise of ordinary care it would reasonably have been anticipated that there was a likelihood of explosion if said Zerone container were subjected to intense heat; that defendant permitted plaintiff to assist him in welding a piece of angle iron onto said drum, and that while plaintiff was so engaged the drum exploded and injured plaintiff; that defendant failed to exercise ordinary care under the circumstances, and that such negligence caused plaintiff's injuries. Defendant claims that there was no evidence to show that the washing of the drum would have removed the residue of Zerone or prevented the explosion; that there is no evidence of the chemical constituency of Zerone, other than that it has a base of methyl alcohol, or whether it can be washed from a container. There was sufficient evidence to sustain Instruction No. 1. Defendant testified that he did not wash out the drum. "Washed out of said drum," as used in the instruction, was reasonably to be understood as synonymous with "cleansing" the drum, and removing the residue of Zerone remaining in the drum. "Washing" is not necessarily restricted to washing with water. Under the dictionary definition of the term "wash," which is synonymous with "clean" or "cleanse," washing includes the application of water or other liquids other than water, water with soap, steam, air,

etc., and drenching, flushing, etc., therewith, so as to remove or carry off impurities and other constituents. As used in Instruction No. 1 under all the facts of this case, including the testimony of defendant that he did not wash out the drum, the jury was entitled to find that defendant failed to cleanse the dangerous residue from the drum. Defendant complains of the lack of evidence that the residue would have been eliminated by washing out the drum, or that the drum would not have exploded if it had been washed out, but it needs no evidence to establish that a cleansing of the drum would have eliminated the residue and that a drum free of Zerone residue would not explode from Zerone residue. These are inferences which naturally follow, given the fact that the drum was cleansed. Defendant further argues that the fact that the drum had not been washed out, if established, could not have constituted negligence or formed a direct, producing and efficient cause of the casualty and that Instruction No. 1 fails to hypothesize a set of facts, which if found, would establish the existence of a legal duty owed by defendant to plaintiff, and a breach of that duty. The existence of a potential danger of explosion on account of a quantity of inflammable substance within the drum sufficient to cause an explosion upon the application of intense heat; knowledge, actual or constructive, by the supplier of the drum, of the potential danger; exposure of plaintiff to the situation of danger, and failure of the supplier of the drum to take the proper steps to eliminate the danger, such as an ordinarily careful and prudent person would take, i. e., cleanse the drum, combined to make a case of negligence, and to establish failure to cleanse the drum as an essential link in the chain of causation. The owner of an article or instrumentality who knows, or by the exercise of ordinary care should know, that it is potentially dangerous and liable to inflict injury, and who undertakes to place it in the hands of a mechanic for repair in the course of which there is a likelihood that the dangerous potential will be released, is under a duty to furnish a proper and reasonably safe article or instrumentality, and is liable to the injured party if he fails to exercise ordinary care to eliminate the dangerous condition before placing it in the hands of the mechanic, or to notify him of the dangerous condition. Restatement, Torts, § 392; Harper and James, "The Law of Torts," Vol. 2, § 28.2 p. 1536; King v. National Oil Co., 81 Mo.App. 155; Varas v. James Stewart & Co., 223 Mo. App. 385, 17 S.W.2d 651, loc. cit. 654; Orr v. Shell Oil Co., 352 Mo. 288, 177 S.W. 2d 608; 65 C.J.S. Negligence §§ 70, 98, 99. The rule covers not only articles inherently dangerous in their nature, but also articles (as in this case) dangerous because of the use to which they are to be put by whoever may use them for the purpose intended. Orr v. Shell Oil Co., supra; McLeod v. Linde Air Products Co., 318 Mo. 397, 1 S.W.2d 122. Plaintiff went to the jury on the failure of defendant to eliminate the dangerous condition, rather than on failure to warn, submitting failure to wash out (cleanse) the drum. Instruction No. 1 sufficiently hypothesized the legal duty and its breach.

■ Defendant complains of the refusal of its Instruction B:

"The Court instructs the jury that if you find and believe from the evidence that the plaintiff voluntarily undertook to weld the barrels in question shown in the evidence and at the time, if you so find, plaintiff was an experience[d] welder and if you further find that at the time of the explosion plaintiff was performing a gratuitous service for the defendant and if you further find that he was not directed by his employer, one Robert Martin, to do said welding, then the Court instructs you that the plaintiff assumed whatever risk was incident to said gratuity, and even though you find that there was an explosion of said barrel and as a conse-

quence of said explosion the plaintiff was injured then the Court instructs you that the plaintiff is not entitled to recover and your verdict must be for the defendant."

The defense of assumption of risk applies only where there is knowledge and appreciation of the danger. Westborough Country Club v. Palmer, 8 Cir., 204 F.2d 143; 65 C.J.S. Negligence § 174. One of the deficiencies of Instruction B is that neither of these elements was a required finding. There was no error in refusing Instruction B.

■ Defendant complains of the refusal of its Instruction C:

"The Court instructs the jury that plaintiff was required to exercise ordinary care for his own safety, and if plaintiff knew, or in the exercise of ordinary care should have known, that he was engaged in a dangerous undertaking, then the Court instructs you that the defendant was not required to warn plaintiff of the danger incident to welding on said barrel."

Instruction C, an attempt to submit the unpleaded defense of contributory negligence, constitutes an abstract declaration of the law on an issue foreign to plaintiff's theory of the case and not submitted to the jury. Plaintiff did not submit his case to the jury on the theory of failure to warn. Instruction C hypothesizes no facts the finding of which would constitute contributory negligence. It does not direct a verdict. It had no place in the case. Furthermore, Instruction C incorrectly states the law. Plaintiff's knowledge, standing alone, that he was engaged generally in dangerous work or in a dangerous undertaking, would not relieve defendant of any duty to warn, in a case where plaintiff was counting on the duty to warn. It was not error to refuse Instruction C.

■ Finally, it is urged that the verdict of $15,000 is excessive. Plaintiff had sustained an accident in 1927 which resulted in the amputation of the right ring finger and the loss of a portion of the little finger on his right hand. This left him with considerable disability in his little finger, but plaintiff had a functional hand notwithstanding and was able to carry on his trade as an automobile mechanic and to do his work with satisfaction to his employers. Plaintiff was 58 years old at the time of the injury. He was earning $70 a week. He had a 7th grade education. Plaintiff was in the hospital for eighteen days after the accident. He suffered numerous burns about his face, hands and body but the burns healed causing no functional disability. X rays taken on the day of the accident showed that plaintiff sustained a comminuted crushing type fracture of the proximal phalanx of the index finger of the right hand, a chipped fracture off the distal phalanx at the first joint of this finger, numerous fractures of the middle finger extending into the knuckle joint space, a fracture of the styloid process of the radius extending into the joint space of the wrist; comminuted, complete, impacted fractures of the second, third, fourth and fifth metacarpal bones. Eventually there was amputation of the terminal phalanges of the index finger. The fractures in the metacarpal in the index, middle, ring and little fingers healed in a crooked, deformed position. This is a permanent condition. Defendant's own examining physician testified that plaintiff had very little motion in his hand or fingers, a poor grip and a marked impairment of the use of the right hand from a functional standpoint. Prior to the accident he had a functional hand with which he could pick up objects, handle small tools and write with a pencil, but he cannot close his hand enough now to pick up or handle small objects. The doctor considered that plaintiff would have difficulty getting a job in the open market with that type of hand; that he would be "a pretty good man if he can hold up his job with that type of hand." Plaintiff testified that as a result of the accident he cannot

carry on as an automobile mechanic, and cannot "hold down a job." The only trade he knows is that of automobile mechanic. He tried to operate an automobile repair job on his own but "couldn't make a go of it." At the time of trial plaintiff had lost approximately $7,400 in earnings. There was no evidence of expenditures for medical attention or hospital care and no evidence of the need of any future medical attention.

The decided cases upon which defendant bases its claim of excessiveness are Harris v. St. Louis Public Service Co., Mo.Sup., 270 S.W.2d 850, and Jones v. Thompson, 353 Mo. 730, 184 S.W.2d 407. In Harris a 59-year-old woman sustained somewhat comparable injuries which prevented her from returning to her former employment at which she earned in excess of $50 per week. Injured April 13 she was approved by her physician for return to work on June 4. There were medical expenses of between $700 and $800. A judgment for $13,500 was held excessive in the amount of $3,500. The loss of wages in that case amounted to between $200 and $250, whereas the loss of wages in the instant case is in excess of $7,400 and this plaintiff will never be able to return to his employment, so there is the additional factor of considerable loss of future earnings. In Jones a judgment for $18,521 for the 90 per cent loss of the use of a left hand of a 41-year-old messenger and machinist whose earnings ranged between $30 and $75 per week was held excessive by $6,000 in the year 1944, a wholly different economic era from that in which we find ourselves.

In Roderick v. St. Louis Southwestern Ry. Co., Mo.Sup., 299 S.W.2d 422, a 49-year-old electrician's helper contracted dermatitis from a chemical used in his work. He lost $150 in earnings. Because of the acquired sensitivity he could never again work around chromates and for an indefinite time would be unfit for any work where he would come in contact with greases, oils and solvents. A $45,000 verdict was reduced by remittitur to $15,000 in the trial court. On appeal this court, conceding that $15,000 was ample, nevertheless sustained the trial court's exercise of discretion, and overruled a contention that $15,000 was excessive. Roderick's impairment of earning capacity was restricted only to certain types of activity. Fletcher's impairment of earning capacity was not so restricted, but for all practical purposes was total. Considering plaintiff's age, education, lack of skills, the nature and extent of injuries, the loss of earnings, past and future, the shrunken value of the dollar and all of the other facts and circumstances, including the rule of uniformity, the verdict is not excessive.

Accordingly, the judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.