Lisa GAMBLE, Appellant,

v.

Travis BOST, et al., Respondent.

No. WD 49185.

Missouri Court of Appeals,
Western District.

April 25, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 30, 1995.

Application to Transfer Denied
July 25, 1995.

Ronald R. McMillin, Jefferson City, for appellant.

Harold A. Walther, Columbia, for respondent Gamble.

John G. Schultz, Kansas City, for respondent Marriott Corp.

Ralph M. Humphreys, Jefferson City, for respondent Bost.

Before SPINDEN, P.J., and ULRICH and SMART, JJ.

SMART, Judge.

Lisa Gamble suffered a blow to the head from a bowling ball thrown by Travis Bost at a bowling alley owned by Marriott Corporation. She filed suit against both Bost and Marriott. After a jury verdict in favor of the defendants, Gamble filed a motion for new trial. The motion was granted as to Bost, but denied as to Marriott. Gamble appeals from the denial of her motion for a new trial as to Marriott, claiming that the trial court erred in submitting Instruction No. 9, an assumption of risk instruction, as it prejudiced her claim not only as to Bost but also as to Marriott. Bost also appeals, claiming that the trial court erred in overruling his motion for directed verdict and in sustaining Gamble's motion for a new trial. The order of new trial is affirmed as to Bost and denial of new trial as to Marriott is reversed.

On December 6, 1987, Lisa Gamble and her husband, Kevin Gamble, were guests at Marriott's Tan–Tar–A resort at the Lake of the Ozarks. Gamble and her husband went to the resort's bowling alley along with her parents and some friends. The bowling alley was constructed on two levels, with a reception and ball storage area approximately 8 to 10 feet above a lower level containing the bowling lanes, scorer's tables and spectator seats. A railing separated the two levels.

Gamble was sitting in her husband's lap at the scorer's table in the lower section of the alley attempting to learn to keep score. She was struck in the head by a bowling ball. The ball had been thrown from the upper level of the alley by 11 year old Travis Bost, a guest at the resort. Apparently, the ball had somehow slipped out of Bost's hands as he was testing it. It hit the railing and then hit Gamble and her husband. Gamble sustained head and jaw injuries.

In the interest of clarity, Bost's appeal will be addressed first. He claims that the trial

court erred in overruling his motion for directed verdict and in sustaining Gamble's motion for new trial. He contends that: (1) Gamble failed to plead or prove a submissible case in that liability for her injury must be based on reckless, not negligent, conduct; (2) there was no error in submitting Instruction No. 9, an instruction on assumption of risk; and (3) even if it were error to submit Instruction No. 9, that error was not prejudicial.

■ The trial court did not specify precisely the grounds on which the new trial was granted, stating only that the motion was sustained as to Bost, "on the basis of instruction No. 9." The motion for new trial had asserted three different grounds of error with regard to instruction No. 9. The lack of precision violates Rule 78.03, requiring that an order allowing a new trial "shall specify" the ground on which the new trial is granted. *See Greek by Greek v. Midwestern Tel., Inc.,* 880 S.W.2d 364, 365 (Mo.App.1994); *Southern Missouri Bank v. Fogle,* 738 S.W.2d 153, 156 (Mo.App.1987). This does not render such order ineffective, however. *Blue Cross Health Servs. v. Sauer,* 800 S.W.2d 72, 75 (Mo.App.1990). A rebuttable presumption of error is created and the burden shifts to respondent Gamble to support the order. *Id.* Respondent Gamble meets this burden if it is demonstrated that her motion could be sustained on grounds contained in the motion for new trial. *C.M. v. K.M.,* 878 S.W.2d 55, 56 (Mo.App.1994); *Southern Missouri Bank v. Fogle,* 738 S.W.2d at 157. She is confined to errors mentioned in the motion for new trial and in her brief. *C.M. v. K.M.,* 878 S.W.2d at 56.

■ Bost's contention that he should have been granted a directed verdict must contend with a difficult standard of review. A directed verdict is a drastic action and should only be granted if reasonable persons could not differ as to the outcome of the case. *Hawkins v. Compo,* 781 S.W.2d 128, 133 (Mo.App.1989). Review of the denial of a motion for directed verdict is treated as a question of law. *Id.* In reviewing the denial of a directed verdict, the evidence presented at trial is examined in the light most favorable to non-moving party in order to discover whether or not substantial evidence was introduced to prove facts essential to that party's claim. *Bequette v. Buff,* 862 S.W.2d 921, 922 (Mo.App.1993).

### Standard of Care of Injuries Arising out of Bowling

■ Bost's initial argument is that Gamble failed to plead or prove a submissible case because liability for her injury must be based upon reckless, not negligent, conduct. It is true that Missouri case law holds to a reckless standard for injuries arising out of a plaintiff's participation in athletic competition. In *Ross v. Clouser,* 637 S.W.2d 11 (Mo. banc 1982), the plaintiff was injured while participating in a softball game. The Missouri Supreme Court held that "personal injuries incurred during athletic competition must be predicated on recklessness, not mere negligence...." *Id.* at 13–14. The court found *Nabozny v. Barnhill,* 31 Ill.App.3d 212, 334 N.E.2d 258 (1975) to be persuasive. In *Nabozny* the court noted that the law should not be an unreasonable burden on active participation in sports and stated:

> [T]his court believes that when athletes are engaged in an athletic competition; all teams involved are trained and coached by knowledgeable personnel; a recognized set of rules governs the conduct of the competition; and a safety rule is contained therein which is primarily designed to protect players from serious injury, a player is then charged with a legal duty to every other player on the field to refrain from conduct proscribed by a safety rule. A reckless disregard for the safety of other players cannot be excused.

*Nabozny v. Barnhill,* 334 N.E.2d at 260–61.

The court in *Ross* found that assumption of risk is an affirmative defense to a charge of reckless conduct. *Ross v. Clouser,* 637 S.W.2d at 14 (citing Restatement (Second) of Torts, §§ 496A and 503 (1965)). In *Martin v. Buzan,* 857 S.W.2d 366 (Mo.App.1993), another case involving softball, the court, in following *Ross,* declined an invitation to abolish the assumption of risk defense and reaffirmed the vitality of the reckless standard as applied to injuries sustained during athletic competition. Other courts have generally

adhered to a reckless standard and applied it to a variety of sports. *See Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516 (10th Cir.1979) (professional football); *Gauvin v. Clark,* 404 Mass. 450, 537 N.E.2d 94 (1989) (hockey); *Dotzler v. Tuttle,* 234 Neb. 176, 449 N.W.2d 774 (1990) (basketball); *Connell v. Payne,* 814 S.W.2d 486 (Tex.App.1991) (polo).

Bowling, however, does not involve contact among the participants. The foreseeable risks in bowling differ in kind and degree from those traditionally associated with contact sports. Although the question of the proper standard for bowling has not been addressed, courts have examined the reckless standard as applied to those sports where contact is the exception, not the rule. In *Novak v. Virene,* 224 Ill.App.3d 317, 166 Ill. Dec. 620, 586 N.E.2d 578 (1991), the court declined to apply the reckless standard in a case involving a downhill skiing collision. Distinguishing *Nabozny* and its progeny, the court stated while there was a possibility of collisions in downhill skiing, "by one's participation in the sport, one does not voluntarily submit to bodily contact with other skiers, and such contact is not inevitable." *Novak v. Virene,* 166 Ill.Dec. at 622, 586 N.E.2d at 580. The court found that the concern expressed in *Nabozny* over whether applying a negligence standard would burden participation in the sport, was inapplicable to downhill skiing. *Id.* The court held that an ordinary negligence standard was to be used, concluding that, "[m]any activities in life are fraught with danger, and absent a specific assumption of risk, one may obtain damages when injured by another's negligence." *Id.* *See also Bangert v. Shaffner,* 848 S.W.2d 353 (Tex.App.1993) (declined to apply reckless standard to parasailing accident).

▮ In the instant case, Gamble was hit in the head by a bowling ball. This is not the type of injury inevitably associated with bowling as inherent in the sport. Those who enter a bowling alley do not voluntarily submit to the risk of such an occurrence as a necessary incident of bowling. The policy considerations advanced in *Ross* and *Nabozny* are not present here. We see no burden on participation in bowling imposed by using a negligence standard. Accordingly, we hold that negligence is the proper standard to be applied in this case and that Bost owed Gamble a duty of ordinary care.

### Sufficiency of the Evidence

▮ Bost also contends that there was not a submissible case even as to negligence, pointing out that even Gamble's witnesses referred to the incident as an "accident." This contention is mere semantics and is without merit. The statements made by Gamble's witnesses as to the "accident" could reasonably be viewed merely as an acknowledgement that Travis Bost had no malicious design to harm Mrs. Gamble. The court, in any event, is not bound by the phraseology used by the witnesses but by the facts presented in their testimony. Upon review of the denial for directed verdict, the evidence will be viewed in the light most favorable to Gamble, *Bequette v. Buff,* 862 S.W.2d at 922, and we find that there was sufficient evidence that a reasonable person could find the existence of negligence. The evidence demonstrated that the bowling ball was launched with sufficient force to travel to the scorer's table and hit persons seated at that table approximately five to six feet from the rail. This testimony, coupled with common sense and testimony as to how bowling balls are ordinarily tested by bowlers, allows an inference of negligence on the part of Bost. The trial court did not err in refusing to grant Bost's motion for directed verdict.

### Instruction on Assumption of Risk

Bost contends that the trial court erred in granting a new trial to Gamble because assumption of risk was properly submitted in Instruction No. 9 in that Gamble consented to the reasonably foreseeable risks of participating in bowling, including the circumstances of this accident. He further contends that even if Instruction No. 9 was improperly given or worded, it was not prejudicial. Instruction No. 9 reads:

Your verdict must be for defendant Travis Bost if you believe:

First, that plaintiff Lisa Gamble knew or should have reasonably foreseen that a bowler might lose control of a bowling ball, and

Second, the plaintiff Lisa Gamble voluntarily exposed herself to that risk, and Third, plaintiff Lisa Gamble was injured thereby.

 Assumption of risk is still a viable defense in Missouri despite the adoption of comparative fault principles. *Martin v. Buzan*, 857 S.W.2d at 368.[1] The basis of the doctrine is that recovery for injuries should not be allowed where one voluntarily exposes oneself to a danger that is known and appreciated. *Fletcher v. Kemp*, 327 S.W.2d 178, 183 (Mo.1959). According to Prosser and Keeton on Torts, § 68, 486–87 (5th ed.1984), the defense of assumption of risk is very narrow. The authors outline the required elements:

> [F]irst, the plaintiff must know that the risk is present, and he must further understand its nature; and second, his choice to incur it must be free and voluntary....

> Under ordinary circumstances the plaintiff will not be taken to assume any risk of either activities or conditions of which he has no knowledge. Moreover he must not only know of the facts which create the danger, but he must comprehend and appreciate the nature of the danger he confronts.

 In *Strang v. Deere & Co.*, 796 S.W.2d 908, 916 (Mo.App.1990), the court discusses cases where the assumption of risk instruction has been approved. It finds the "common thread" in such cases is "that there must be facts from which a jury can find that a plaintiff intelligently consented to assume the risk knowing what the real danger of injury was." *Id.* (citing *Turpin v. Shoemaker*, 427 S.W.2d 485, 490 (Mo.1968). There are no such facts in the instant case showing that Gamble knew and appreciated the danger of being hit in the head by a bowling ball, or that the risk of being hit in the head by a

bowling ball was "inherent" in the sport of bowling. *See Martin v. Buzan*, 857 S.W.2d 366, 369 (Mo.App.1993). There is nothing in the record showing that she voluntarily and intelligently consented to such danger merely by entering a bowling alley. Nor is this a risk which anyone of adult age must be taken to appreciate, such as the danger of slipping on ice. *See, e.g.*, Prosser and Keeton, *supra*, at 488.

Bost points to Gamble's pleadings and her testimony upon cross-examination about the pleadings as conclusive evidence as to her recognition of the danger of being hit in the head by a bowling ball. He claims that Gamble admitted that it was reasonably foreseeable that: (1) the bowling balls would be tested by patrons for fit; (2) patrons could lose their grip on the balls causing them to be propelled into the area of the bowling lanes and the scoring tables. Examination of the record, however, does not show this to be true.

 In her pleading, Gamble alleged that defendant Marriott knew or should have known of the risk, and that it was reasonably foreseeable to Marriott that such an accident could occur. She was cross-examined at trial by Bost as to the contents of the pleadings against Marriott. Parties are permitted to plead in the alternative, and it was improper for Bost to use the pleadings directed against Marriott as admissions on the part of Gamble, or as prior inconsistent statements. *Johnson v. Flex–O–Lite Mfg. Corp.*, 314 S.W.2d 75 (Mo.1958); *Lewis v. Wahl*, 842 S.W.2d 82 (Mo. banc 1992). Further, neither the pleadings nor the testimony established that Gamble knew the risk of being hit in the head with a bowling ball and consented to undertake such risk. The pleadings were, of course, drafted *after* the incident. Certainly Mrs. Gamble at that point was aware of some

---

1. In *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983), the court adopted the Uniform Comparative Fault Act. The UCFA defines "fault" as including "unreasonable assumption of risk not constituting an enforceable express consent." But in *Gustafson*, the court did not abolish assumption of risk. *Martin v. Buzan*, 857 S.W.2d at 368. Also, the court in *Gustafson* did not necessarily intend to adopt the commissioners' comments to the UCFA. *Lippard v. Houdaille* *Indus., Inc.*, 715 S.W.2d 491, 492 (Mo. banc 1986). Section 537.765 RSMo 1994, applicable to products claims, provides that assumption of the risk, although included in the concept of fault, is not to be treated as a complete bar to plaintiff's recovery, but instead is to be treated as a basis for proportionate diminution of the award. That section does not purport to apply beyond torts involving product liability.

risk. But her suggestion that Marriott should have been aware of the risk before the incident does not show her awareness before the incident. It is non-sensical to suggest that because a proprietor may have a duty to take precautions against a risk, anyone injured by the occurrence of the harm in question (who brings an action, alleging the existence of such risk) is barred from recovery by assumption of the risk. If that were the case, no proprietor would ever be liable for failing to take precautions against a known danger, because the injured plaintiff would be held to have assumed the risk on the basis of plaintiff's pleadings asserting the existence of the risk.

The trial court erred in giving the assumption of risk instruction because the giving of the instruction was not supported by the evidence. The trial court was correct in granting Gamble's motion for a new trial and that order is affirmed.

### Motion for New Trial as to Marriott

We now turn to Gamble's appeal from the denial of her motion for new trial as to defendant Marriott. She claims that the trial court's error in submitting the assumption of risk instruction not only prejudiced her claim against Bost, but also prejudiced her claim against Marriott. Defendant Marriott replies that it never asked for an assumption of risk instruction and it tried a "clean case." Therefore, Marriott argues, it would be unjust and improper to submit Marriott to another trial of the issues.

Instruction No. 9 was an affirmative defense instruction submitted by Bost. It referred only to Gamble's claim against Bost; it did not refer to Gamble's claim against Marriott. Gamble claims, however, that the conduct of Bost and of Marriott were inextricably intertwined because both were contributing causes of Gamble's injuries. As the jury had already been improperly instructed as to assumption of risk, that issue was before it and was, Gamble argues, a factor in the outcome of the Gamble's case against Marriott.

 Marriott contends that Gamble's complaint is untimely and that she did not specifically raise this objection at the time the instruction was given as required by Rule 70.03. The rationale behind making objections is to avert error and allow the trial court to make an intelligent ruling. *Chism v. Steffens,* 797 S.W.2d 553, 559 (Mo.App.1990). Marriott's argument that this contention was not preserved fails to recognize the distinction between pointing out the nature of the error, and pointing out all of the possible consequences of the error. Mrs. Gamble's concern was with keeping the instruction from being given. It would impose an unduly high standard on plaintiff to suggest she must, at the time of the instruction conference, foresee and describe all of the potentially damaging consequences of the error. Moreover, plaintiff did argue the consequences of the error in her motion for new trial, in which plaintiff explicitly stated that the instruction not only prejudiced her case against Bost, but also compromised her case against Marriott. We conclude the objection was preserved for purposes of appeal.

 We have already decided that the giving of the assumption of risk instruction was improper. Marriott argues that whatever harm was done by giving the instruction was limited to Gamble's case against Bost and did not include Gamble's case against Marriott because the instruction was concerned solely with the case against Bost. Gamble's case against Marriott was submitted exclusively on a premises liability theory, a separate and distinct legal theory from the negligence theory that formed the basis of her case against Bost.

 The assumption of risk instruction, although failing to name defendant Marriott, nevertheless presented overlapping and confusing issues as to *both* defendants. *See Swindell v. J.A. Tobin Const. Co.,* 629 S.W.2d 536, 544 (Mo.App.1981) (denying a new trial as to one defendant while granting it as to others because the converse instruction of the one defendant had no relationship to the erroneous converse of the other defendants). We believe the instruction had the effect of confusing the jury as to both defendants in spite of the fact that Gamble proceeded against the defendants on separate theories of liability. Bost's behavior was a component

of Gamble's case against Marriott; *i.e.*, Gamble would not have been hurt but for the allegedly faulty design of Marriott's bowling alley which located ball storage above the lanes, putting Bost into a position whereby his alleged negligence could cause harm to Gamble. Instruction No. 2 told the jury to "consider each instruction in light of and in harmony with the other instructions, and you should apply the instructions as a whole to the evidence." Indeed, it is axiomatic that all instructions must be read together as a whole. *Goodwin v. S.J. Groves & Sons Co.*, 525 S.W.2d 577, 582 (Mo.App.1975). They are regarded as being given to and considered by jurors of reasonable intelligence. *Deskin v. Brewer*, 590 S.W.2d 392, 401 (Mo. App.1979). It is logical to assume that a jury, finding that Gamble had assumed the risk as to Bost's negligence, could also reasonably assume that Marriott should bear no liability.

■ In assessing the extent to which the jury may have been misled by an instruction improperly given, we also cannot ignore the further complication that the wording of the instruction would not have been proper even if there had been evidence to support an assumption of risk defense. Assumption of the risk, as we already noted, is a complete defense. The bar to recovery is based upon the principle that one who voluntarily exposes himself to a known and appreciated danger due to the negligence of another may not recover for an injury resulting from such exposure, even though the injured person may have been in the exercise of due care for his own safety at the time. *Fletcher v. Kemp*, 327 S.W.2d 178, 183 (Mo.1959); Restatement (Second) of Torts § 496A (1965). The principle of assumption of risk is that the defendant cannot be liable for a danger to which plaintiff voluntarily exposed himself or herself, fully appreciating the degree and extent of the danger. If, on the other hand, a plaintiff has unreasonably failed to appreciate the danger, or is unreasonably careless in evaluating the need to proceed in spite of the danger, such a plaintiff has not voluntarily and consciously assumed the risk of being injured by a danger which is fully appreciated. In short, such a plaintiff has committed an act of contributory fault but has not as-

sumed the risk. Prosser and Keeton on Torts, § 68, 486–87 (5th ed. 1984). Assumption of risk is based fundamentally on consent, whereas contributory fault is not. *Id.* The plaintiff in that case has committed an act of contributory fault and that fault may be allocated to the plaintiff. *Id.*

■ The instruction in this case merged contributory fault concepts with assumption of the risk. The instruction presented the alleged contributory fault (that Lisa Gamble "should have reasonably foreseen that a bowler might lose control of a bowling ball") as though it were assumption of risk because it instructed the jury that if it found Lisa Gamble *should have foreseen* such risk, the jury must render a verdict for Defendant Bost. Had there been evidence to support the giving of a contributory fault instruction, it would have properly asked the jury to allocate fault in accordance with its findings. While Marriott was not responsible for proposing the improper instruction, Marriott, we believe, received the benefit of the instruction along with Bost. Quite likely, the jury believed either that such accidents are an inevitable part of bowling (which the evidence did not support), or that Mrs. Gamble was somehow negligent in sitting where she sat, and in failing to take into account the risk of being hit in that location (which would seem inconsistent with the jury's finding that Marriott was *not* negligent in placing the seating in that location in view of the circumstances). Either belief by the jury would have skewed the result, resulting in a verdict for Marriott. The trial judge is generally in the best position to gauge the possible prejudicial effect of the error, but we find the foregoing logic sufficiently compelling to warrant reversing the trial court in this case. We hold that the trial court abused its discretion by not granting Gamble's motion for new trial as to defendant Marriott.

### Conclusion

Bost's points on appeal are denied. The trial court correctly denied Bost's motion for a directed verdict. The trial court's order granting Gamble a new trial as to defendant Bost is affirmed. Gamble's contention that

the trial court erred in denying a new trial as to Marriott is granted. The trial court's order denying Gamble a new trial as to defendant Marriott is reversed and the cause remanded.

All concur.