JULIAN CLAUDIO NABOZNY, a Minor, by His Father and Next Friend, EDWARD J. NABOZNY, Plaintiff-Appellant, *v.* DAVID BARNHILL, Defendant-Appellee.

(No. 58120;

First District (4th Division)—July 23, 1975.

Albert F. Hofeld, of Chicago (William J. Harte, of counsel), for appellant.

Kirkland & Ellis, of Chicago (Cornelius J. Harrington and Gary M. Elden, of counsel), for appellee.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Plaintiff, Julian Claudio Nabozny, a minor, by Edward J. Nabozny, his father, commenced this action to recover damages for personal injuries allegedly caused by the negligence of defendant, David Barnhill. Trial was before a jury. At the close of plaintiff's case on motion of defendant, the trial court directed a verdict in favor of the defendant. Plaintiff appeals from the order granting the motion.

Plaintiff contends on appeal that the trial judge erred in granting defendant's motion for a directed verdict and that plaintiff's actions as a participant do not prohibit the establishment of a prima facie case of negligence. Defendant argues in support of the trial court's ruling that defendant was free from negligence as a matter of law (lacking a duty to plaintiff) and that plaintiff was contributorily negligent as a matter of law.

In light of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504, our statement of facts reflects an examination of all of the evidence viewed in its aspect most favorable to plaintiff.

A soccer match began between two amateur teams at Duke Child's Field in Winnetka, Illinois. Plaintiff was playing the position of goalkeeper for the Hansa team. Defendant was playing the position of forward for the Winnetka team. Members of both teams were of high-school age. Approximately 20 minutes after play had begun, a Winnetka player kicked the ball over the midfield line. Two players, Jim Gallos (for Hansa) and the defendant (for Winnetka) chased the free ball. Gallos reached the ball first. Since he was closely pursued by the defendant,

Gallos passed the ball to the plaintiff, the Hansa goalkeeper. Gallos then turned away and prepared to receive a pass from the plaintiff. The plaintiff, in the meantime, went down on his left knee, received the pass, and pulled the ball to his chest. The defendant did not turn away when Gallos did, but continued to run in the direction of the plaintiff and kicked the left side of plaintiff's head causing plaintiff severe injuries.

All of the occurrence witnesses agreed that the defendant had time to avoid contact with plaintiff and that the plaintiff remained at all times within the "penalty area," a rectangular area between the 18th yard line and the goal. Four witnesses testified that they saw plaintiff in a crouched position on his left knee inside the penalty zone. Plaintiff testified that he actually had possession of the ball when he was struck by defendant. One witness, Marie Shekem, stated that plaintiff had the ball when he was kicked. All other occurrence witnesses stated that they thought plaintiff was in possession of the ball.

Plaintiff called three expert witnesses. Julius Roth, coach of the Hansa team, testified that the game in question was being played under "F.I.F.A." rules. The three experts agreed that those rules prohibited all players from making contact with the goalkeeper when he is in possession of the ball in the penalty area. Possession is defined in the Chicago area as referring to the goalkeeper having his hands on the ball. Under "F.I.F.A." rules, any contact with a goalkeeper in possession in the penalty area is an infraction of the rules, even if such contact is unintentional. The goalkeeper is the only member of a team who is allowed to touch a ball in play so long as he remains in the penalty area. The only legal contact permitted in soccer is shoulder to shoulder contact between players going for a ball within playing distance. The three experts agreed that the contact in question in this case should not have occurred. Additionally, goalkeeper head injuries are extremely rare in soccer. As a result of being struck, plaintiff suffered permanent damage to his skull and brain.

The initial question presented by this appeal is whether, under the facts in evidence, such a relationship existed between the parties that the court will impose a legal duty upon one for the benefit of the other. "[M]ore simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." Prosser, Law of Torts § 37, at 206 (4th ed. 1971).

There is a dearth of case law involving organized athletic competition wherein one of the participants is charged with negligence. There are no such Illinois cases. A number of other jurisdictions prohibit recovery generally for reasons of public policy. (*Eg.*, *Gaspard v. Grain Dealers Mutual*

*Insurance Co.* (La. App. 1961), 131 So. 2d 831.) We can find no American cases dealing with the game of soccer.

This court believes that the law should not place unreasonable burdens on the free and vigorous participation in sports by our youth. However, we also believe that organized, athletic competition does not exist in a vacuum. Rather, some of the restraints of civilization must accompany every athlete on to the playing field. One of the educational benefits of organized athletic competition to our youth is the development of discipline and self-control.

Individual sports are advanced and competition enhanced by a comprehensive set of rules. Some rules secure the better playing of the game as a test of skill. Other rules are primarily designed to protect participants from serious injury. Restatement (Second) of Torts § 50, comment *b* (4th ed. 1971).

■■ For these reasons, this court believes that when athletes are engaged in an athletic competition; all teams involved are trained and coached by knowledgeable personnel; a recognized set of rules governs the conduct of the competition; and a safety rule is contained therein which is primarily designed to protect players from serious injury, a player is then charged with a legal duty to every other player on the field to refrain from conduct proscribed by a safety rule. A reckless disregard for the safety of other players cannot be excused. To engage in such conduct is to create an intolerable and unreasonable risk of serious injury to other participants. We have carefully drawn the rule announced herein in order to control a new field of personal injury litigation. Under the facts presented in the case at bar, we find such a duty clearly arose. Plaintiff was entitled to legal protection at the hands of the defendant. The defendant contends he is immune from tort action for any injury to another player that happens during the course of a game, to which theory we do not subscribe.

It is our opinion that a player is liable for injury in a tort action if his conduct is such that it is either deliberate, wilful or with a reckless disregard for the safety of the other player so as to cause injury to that player, the same being a question of fact to be decided by a jury.

■■ Defendant also asserts that plaintiff was contributorily negligent as a matter of law, and, therefore, the trial court's direction of a verdict in defendant's favor was correct. We do not agree. The evidence presented tended to show that plaintiff was in the exercise of ordinary care for his own safety. While playing his position, he remained in the penalty area and took possession of the ball in a proper manner. Plaintiff had no reason to know of the danger created by defendant. Without this knowl-

edge, it cannot be said that plaintiff unreasonably exposed himself to such danger or failed to discover or appreciate the risk. The facts in evidence revealed that the play in question was of a kind commonly executed in this sport. Frank Longo, one of plaintiff's expert witnesses, testified that once the goalkeeper gets possession of the ball in the penalty area, "the instinct should be there [in an opposing player pursuing the ball] through training and knowledge of the rules to avoid contact [with the goalkeeper]." All of plaintiff's expert witnesses agreed that a player charging an opposition goaltender, under circumstances similar to those which existed during the play in question, should be able to avoid all contact. Furthermore, it is a violation of the rules for a player simply to kick at the ball when a goalkeeper has possession in the penalty area even if no contact is made with the goalkeeper.

Using the standard set out in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504, for determining both freedom from negligence and contributory negligence as matters of law, we conclude that the trial court erred in directing a verdict in favor of defendant. It is a fact question for the jury.

This cause, therefore, is reversed and remanded to the Circuit Court of Cook County for a new trial consistent with the views expressed in this opinion.

Reversed and remanded.

DIERINGER, P. J., and JOHNSON, J., concur.