WILLARD DEAN OSBORNE, JR., a Minor, by Willard Osborne, Sr., his Father and Next Friend, Plaintiff-Appellee, *v.* VICTOR SPROWLS, Defendant-Appellant.

Third District   No. 79-507

Opinion filed May 7, 1980.

SCOTT, J., dissenting.

George R. Black, of Black and Black, of Morris, for appellant.

Peter F. Ferracuti and Eric B. Deobler, both of Ottawa, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

The defendant, Victor Sprowls, appeals from the judgment of the court, after a jury verdict, finding Sprowls liable for injuries suffered by plaintiff Willard Osborne, Jr. Damages in the amount of $31,350 were awarded by the jury. On appeal, the defense argues (1) that there was no negligence, as a matter of law; (2) that the plaintiff Osborne was guilty of contributory negligence, as a matter of law; and (3) that a willful and wanton standard, and not a negligence standard, ought to have been the only standard applied in this case.

While the facts in the case were disputed, the defense, as it must where a verdict has been returned for the plaintiff, accepts as true the plaintiff's evidence in its light most favorable to the plaintiff. Those facts indicate that on September 25, 1975, Willard Osborne, Jr., and 10 to 15 of his eighth grade classmates gathered after school in the backyard of Laurie Cronin, one of the eighth graders. Most of the children had worked on their eighth grade project (a float for the upcoming homecoming parade) prior to going over to the Cronins'. The Cronin residence had a large backyard, which adjoined another large backyard, that of the Norton residence, without fence or other obstruction between them. Willard Osborne, Jr., at the time, was 13 years old, weighed 80 to 85 pounds and stood under 5' in height. The defendant, Victor Sprowls, lived several blocks down from the Cronin residence. He was 15, a sophomore at Earlville High School. He weighed 130 to 135 pounds and was 5'3" in height. He arrived at the Cronin backyard after the eighth graders had arrived, and he was the oldest of the children there. When Victor Sprowls arrived, a game of "tackle the football" was in progress in the backyards, and he joined in the game. The plaintiff, Willard Osborne, Jr., was also a participant in the game, as were a number of the other boys and girls at the Cronin residence. "Tackle the football" is a neighborhood game, played with a football but with loose, undefined rules. The object of the game is to tackle the person with the football, who, in turn, attempts to avoid being tackled, either by running or by passing the ball to another, who then becomes the person the others attempt to tackle. There are no teams in the game, no well-defined boundaries, and no rules other than "tackle the ballcarrier." The game was played in part of the

Cronin yard and in the adjoining Norton backyard. It was a common game played in Earlville.

The plaintiff's evidence indicated that after the game had continued for perhaps half an hour, it ended when one of the girls shouted, "Pizza's ready." At that time, many of the children went into the Cronin residence for refreshments and pizza, although some others stayed outside in the backyard. There were potato chips on a picnic table in the Cronin backyard. A couple of girls sat on the picnic table, while plaintiff sat on the ground nearby talking with them and with another friend. Plaintiff Willard Osborne sat with his back to the former playing area. While everyone had stopped playing "tackle the ball," two persons, one being the defendant Victor Sprowls, continued to play catch with the football in the backyard. Willard Osborne, while seated on the ground near the table, saw Sprowls playing catch with someone else and running back and forth behind him.

Sometime later, in a matter of a few minutes, the unknown person playing catch with Victor Sprowls threw the football and Sprowls ran backwards to catch the ball. As he ran for the ball, he fell over, and onto, the plaintiff Willard Osborne, seated on the ground. As a result of the collision, Osborne suffered compression fractures of the L1 and L3 vertebrae in his lower back. Suit was later filed seeking recovery for damages sustained in the accident.

The trial of the case proceeded upon two counts, one in negligence, for failure to keep a proper lookout and for negligence in running over the plaintiff, and the other for willful and wanton conduct. The willful and wanton count was directed out by the court, and the case went to the jury solely on the negligence theory. The jury found liability against Sprowls and assessed damages at $31,350. From the judgment, the defendant appeals.

The defense's first argument, in seeking to reverse the judgment, is that, as a matter of law, the defendant owed no duty of ordinary care to the plaintiff while he was seated in the yard. The crux of the defense argument herein is that the collision which occurred was a natural incident to the game which was being played and that the risk was part of the game, just as flying pucks are a risk in hockey, foul balls in baseball, and players running out of bounds in football. The defense argues that the correct standard to be applied in this case would be that set forth in *Nabozny v. Barnhill* (1975), 31 Ill. App. 3d 212, 334 N.E.2d 258. That case dealt with an injury to a soccer player as a result of being kicked by another player on the opposing team during the amateur soccer match. The court therein stated:

"[A] player is liable for injury in a tort action if his conduct is such

that it is either deliberate, willful or with a reckless disregard for the safety of the other player so as to cause injury to that player, the same being a question of fact to be decided by a jury." (31 Ill. App. 3d 212, 215.)

The focus of the court in *Nabozny* was whether the defendant had violated a safety rule of the sport designed to protect another's safety. The court found a duty to refrain from conduct proscribed by the safety rules. (31 Ill. App. 3d 212, 215.) In announcing the rule, the court opined that it had "carefully drawn the rule * * * to control a new field of personal injury litigation." (31 Ill. App. 3d 212, 215.) The defense requests application of the strict rule of *Nabozny* to the facts of the instant case and argues that since there were no safety rules in the "tackle the ball" game, there was no duty owed by the defendant to the plaintiff, except the duty to refrain from willful, wanton, or reckless conduct.

The difficulty with the defense argument with respect to *Nabozny*, and the rule announced therein, arises from the facts of the instant case. The rule has no application to the facts in this case. The injury suffered by Willard Osborne did not occur during the neighborhood athletic contest. Had it occurred during the game, we perceive that the rule of *Nabozny*, or a comparable rule, would have been properly applicable. However, in the instant case, the facts indicate that the game of "tackle the football" had ended. The plaintiff Osborne, as well as all other participants in that game, had ceased playing it. Some went into the Cronin house for pizza and drink. Several, including the plaintiff Osborne, sat by, or on a picnic table in the yard and talked. Two, including the defendant Victor Sprowls, struck up a game of "catch" with the football. Viewed in its aspects most favorable to plaintiff, the evidence indicates that while he was seated near the picnic table, Osborne was seated outside the previous field of play. Also, while there is evidence that he knew that "catch" was being played in the other part of the yard, there is no evidence that the two players involved, or the ball, came near to the picnic table area at any time prior to the fateful collision. Nor is there any indication that the plaintiff was watching the other two boys play catch as he sat on the ground. Briefly put, Willard Osborne was neither a participant in the game nor a spectator.

Thus, those cases dealing with participants and spectators are not controlling or applicable. *Nabozny* dealt with participants in an organized soccer game. *Stewart v. D & R Welding Supply Co.* (1977), 51 Ill. App. 3d 597, 366 N.E.2d 1107, also cited by the defense, concerned a softball umpire injured during a game of softball. The special rules developed for application to sports and sports' contests do not have application here, where the evidence indicates that the game in which

Osborne had participated had ended, and he was neither a participant nor a spectator in the game of "catch" being played by the defendant and another.

■■ ■ In the circumstances of this case, the duty owed plaintiff by defendant was to exercise ordinary care for his safety and the safety of others. There was no error in submitting the negligence count to the jury.

The second issue raised by the defense is whether the evidence demonstrates that the plaintiff Willard Osborne was guilty of contributory negligence as a matter of law. Ordinarily, the question of contributory negligence is one of fact for the jury. In the instant case, the defense argues that Osborne, as spectators in other sports, must be held to have knowledge of the risk involved in his presence near the game being played by others. Therefore, it is argued, given his knowledge of the risk, he was negligent in failing to exercise care for himself, such failure being the fact of sitting on the ground, instead of on the picnic table or in the house. Again, however, the facts in the case demonstrate the unacceptability of the defense position and argument. Willard Osborne sat in an area away from the previous game and near a picnic table and a dirt pile. It was not an area where he could reasonably be expected to anticipate that the defendant would come running. There was no indication, prior to the accident, that the game of catch was occurring or straying into the area around the picnic table where Osborne sat.

Thus, the evidence failed to show that the plaintiff ought reasonably to have been aware of a risk to himself from the game of "catch." His only knowledge concerning the defendant's activity was that he was playing catch in the area of the previous playing field, which did not include the area where he sat down. Also, it must be emphasized, that this is not a case where a spectator is watching a contest or game and can reasonably expect some risk to himself as a result of his position as a spectator. Willard Osborne was not a spectator to defendant's game of "catch." He had his back turned and was engaged in conversation with others, away from the principal area of that game. The spectator cases and rules do not apply to the facts of this case. The question of contributory negligence properly went to the jury.

■■■ The final argument put forth by the defense is that the "willful and wanton" standard is the correct standard for tort liability for a minor playing in a neighborhood game. We can agree with the argument that children, in their neighborhood games, must be allowed a greater margin of error than adults. Imposition of liability, and application of duties of conduct, must take into consideration the maturity of the game's participants and the nature of the game. Something akin to the *Nabozny* standard would appear to be appropriate standard for children participants in a neighborhood game such as "tackle the football."

However, that case is not before us on this appeal. Here, the game had concluded and all had stopped playing it. As already noted, this case does not involve participants in a neighborhood game. Neither does it involve a spectator to a neighborhood game where that spectator was, or should have been, aware of a risk of injury from the game he was watching. Thus, application of special rules for athletic contests, or for children's neighborhood games, is not appropriate in this case.

For the reasons stated, the judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

STENGEL, J., concurs.

Mr. JUSTICE SCOTT, dissenting:

I dissent from the reasoning and result reached in the majority opinion.

It is evident that the plaintiff was guilty of contributory negligence. Previous to his injury he had participated in the unsupervised game of "tackle the football" with other youngsters, both boys and girls. The defendant, a later arriver at the Cronin's backyard, was invited to take part in the game by the participants. When the plaintiff decided to cease playing the game he seated himself in the same backyard where the "tackle the football" game had been played. The plaintiff saw the defendant and another youngster continue to play in the backyard by passing and catching the football. Thus the plaintiff was aware of the defendant's activities prior to the accident and before the plaintiff was warned by the Slaughterback youngster to "watch out."

In the light of such a factual situation it cannot be logically concluded that the plaintiff did not knowingly place himself in a position of danger and thereby assumed the risk of injury. (*Colclough v. Orleans Parish School Board* (La. App. 1964), 166 So.2d 647.) In *Colclough* a father sued for injuries received when he was run into by high school football players who were making an end run. The father was a spectator watching his son participate in a team scrimmage in an open area of a city park which had neither markings of gridiron boundary lines nor seats or accommodations for spectators. There were no barricades around the playing fields. The appeals court of Louisiana noted that plaintiff's complaint contained no allegation of malicious or willful conduct and stated that as regards the plaintiff, "There is no reasonable hypothesis that he was free from negligence." (See also *Cadieux v. Board of Education* (1966), 25 App. Div. 2d 579, 266 N.Y.S. 2d 895.) In *Cadieux* the reviewing court stated

that it is well settled that a spectator at a sporting event assumes the obvious and necessary risks incidental to a game. Like results were reached in the cases of *Ingerson v. Shattuck School* (1931), 185 Minn. 16, 239 N.W. 667 (lady spectator injured when standing on the sidelines by being struck by high school age football players), and *Turner v. Caddo Parish School Board* (1968), 252 La. 810, 214 So. 2d 153 (a grandmother spectator was denied recovery for injuries received at a ninth grade football game and the reviewing court, *inter alia*, held that the plaintiff was charged with common knowledge that players run out of bounds), and *Perry v. Seattle School District* (1965), 66 Wash. 2d 800, 405 P.2d 589 (spectator injured at high school football game held to have committed contributory negligence when she positioned herself along the sidelines). The same rules as to contributory negligence or assumption of risk has been applied as to spectators at a baseball game. *Brown v. San Francisco Ball Club* (1950), 99 Cal. App. 2d 484, 222 P.2d 19; *Cincinnati Baseball Club Co. v. Eno* (1925), 112 Ohio St. 175, 147 N.E. 86.

The foregoing cited cases all relate to injuries received by spectators, and the majority opinion concludes that the plaintiff was not contributorily negligent by categorically classifying him as a nonspectator. The question as to contributory negligence or assumption of risk in the instant case cannot be so casually or easily determined. A pedestrian traveling on a sidewalk when struck by a baseball resulting from a game being played on unfenced city property was entitled to recover damages from the city. (*Jones v. Kane & Roach, Inc.* (1943), 182 Misc. 37, 43 N.Y.S. 2d 149.) Such a factual situation was far different from the one presented to this court. We are confronted with a situation where a voluntary "tackle the football" game took place in a back yard. The plaintiff was a participant and along with other youngsters invited the defendant to participate. The game called "tackle the football" included among other feats the passing and catching of a football. When the game was terminated the passing and catching of a football continued in the same yard. The plaintiff chose to seat himself in that yard with his back turned to the activity. The record discloses that the plaintiff was aware of the continued activity in the yard because he saw it, yet he chose not to remove himself from the sphere of activity. Technically it could be argued that the plaintiff was a spectator, but I am not constrained to consider the question as to whether or not he was a spectator to be of any import. The plaintiff had knowledge and familiarity that the movements of participants passing and throwing a football are not relegated to a set, precise, defined portion of a play area. He was aware of the activity and failed to exercise ordinary care by locating himself in the play area and turning his back on the activity. I fail to find it logical to conclude that there is no assumption of risk when a participant in an unregulated game, fraught with some risk, terminates his

participation and is injured when he seats himself on the edge of the playing area with his back turned to activity like that in which he participated a few minutes earlier. Based upon my rationale, the plaintiff was guilty of contributory negligence as a matter of law.

I further cannot accept a determination that the defendant was a tortfeasor. Mr. Justice Schaefer of our supreme court stated:

> "In many negligence cases no more than foreseeability is involved. And because so many actions grounded upon negligence involve familiar patterns of conduct, it is easy to forget that implicit in an allegation of negligence is the assertion of a failure to comply with the standard of care that the law requires—the assertion of a duty and its breach. (See Prosser on Torts, sec. 36; Green, Duties, Risks, Causation Doctrines, 41 Tex. L. Rev. 42, reprinted in Green, The Litigation Process in Tort Law 125; Harper & James, The Law of Torts, sec. 18.2; Gregory & Kalvan, Cases and Materials on Torts 252.)" *Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231, 233.

In the instant case there was no evidence of reckless, malicious, willful or wanton conduct on the part of the defendant. Nor did the defendant violate any established rule of a game or contest. The evidence failed to disclose any indifference to a conscious disregard on the part of the defendant as to the safety of others. The defendant was found guilty of violating the simple negligence standard. The act of running to catch a football was found to be a tortious act because in so catching the ball he fell upon the plaintiff. After the accident, hindsight makes the occurrence foreseeable. Foreseeability alone, however, does not determine whether an act is tortious. At the base of every tort case in which liability is imposed on a defendant there must be a duty. For the purpose of litigation the duty issue should be specifically stated, to wit, does the defendant's duty, whatever it may be, extend to the specific injury which the victim has received? See Green, *Duties, Risks, Causation Doctrines,* 41 Tex. L. Rev. 42, 45-46 (1962).

Directing the "duty" question to the defendant in the instant case it should be asked, was he under a duty not to participate in a backyard game of passing or catching a football? Was he under a duty to take his eyes off the ball when he attempted to catch it? Was he under a duty to restrict his activity to a defined portion of the yard? The answers to these questions are in the negative, as is the answer to the overall question as to whether the defendant violated or ignored any duty in regard to the injury suffered by the plaintiff. An accident occurred, albeit a regrettable one, but contrary to what appears to be a trend every accident is not the result of tortious conduct.

Lastly, counsel for defendant during oral argument of this case stated that no public policy existed. With this statement I disagree. The imposition of liability upon the facts present in the instant case might well deter participation by young Americans in the wholesome and healthy activity provided by neighborhood pickup games. Such activity and participation should be fostered and encouraged rather than thwarted and discouraged. Such activity is specially refreshing in light of today's permissive society. It is fundamental that the standard of conduct which is the basis of the law of negligence is determined by balancing the risk in the light of the social value of the interest threatened. See Prosser, Torts §31, at 149 (4th ed. 1971); also, the observations of Mr. Justice Schaefer in *Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231, while *obiter dictum*, are nevertheless enlightening as to the public policy question.

For the foregoing reasons I cannot concur with the majority view.