KONRAD et al., Appellants,

v.

MORANT, Appellee, et al.

[Cite as *Konrad v. Morant* (1993), 89 Ohio App.3d 803.]

Court of Appeals of Ohio,
Geauga County.

No. 92–G–1742.

Decided July 1, 1993.

*John F. Norton,* for appellant Sean M. Conrad.

*Robert J. Olender,* for appellant Cleveland Clinic Foundation.

*Henry A. Hentemann* and *Sean P. Allan,* for appellee.

JOSEPH E. MAHONEY, Judge.

This is an accelerated calendar case.

On June 17, 1989, Sean M. Konrad, appellant, and Jonah Morant, appellee, were both age fourteen and passing time at appellant's home. They were classmates and friends. At some time in the past, they had devised a game they had played on prior occasions called "BB Gun War." They decided to play "BB Gun War" on the afternoon in question.

The game was played in the following manner. Both boys had air rifles that fired BB pellets. The boys used these air rifles to try to hit each other. The parties had developed specific rules for the game in order to make it as safe as possible so as to avoid injury. The combatants could pump their air rifles only twice before firing a shot at their opponent. These guns were capable of being pumped ten to twelve times, which would have resulted in greater velocity in the exiting pellet. By limiting the number of pumps to two, the BB pellets would travel at a much slower speed. The second rule was that no shots were to be fired at the head of the opponent.

During the "BB Gun War" that occurred on June 17, 1989, appellee fired a shot that accidentally hit appellant in the eye. Appellee did not intend to aim at appellant's face nor did he intend to injure him in any way. The parties agree that appellee did not purposely violate the rules of the game when the injury occurred and, in fact, the boys remained friends after the incident.

Appellant was taken to the hospital the following day where he underwent surgery to repair the damage to the eye. Appellant's vision was permanently impaired by the accidental shooting.

On October 2, 1990, appellant filed a complaint against appellee and appellee's father in the Geauga County Common Pleas Court. The complaint alleged that both defendants had been negligent. Subsequently, appellee's father was voluntarily dismissed from the lawsuit and is not involved in this appeal.

On March 2, 1991, appellee filed a motion for summary judgment, which was denied on March 27, 1992.

The matter proceeded to a jury trial on November 2, 1992. At the close of appellant's case, appellee made a motion for a directed verdict. The motion was granted by the trial court.

Appellant timely filed a notice of appeal with one assignment of error.

In the sole assignment of error, appellant contends that the trial court erred in granting appellee's motion for directed verdict.

The Ohio Supreme Court has held:

"Where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional' as defined in Sections 500 and 8A of the Restatement of Torts 2d." *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699, at the syllabus. See, also, *Thompson v. McNeil* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705; *Lamendola v. Beatty* (Mar. 29, 1991), Portage App. No. 90–P–2159, unreported, 1991 WL 45625.

The central question in this appeal, therefore, is whether the parties' game of "BB Gun War" is a recreational or sports activity. Appellant asserts that it is not and thus maintains that the *Marchetti* case is inapplicable. Moreover, appellant now asserts that participating in a game where BB pellets are shot at other participants constitutes recklessness as a matter of law. It must be noted that appellant did not allege reckless behavior in his complaint but, rather, only negligent behavior by appellee.

While the court in *Marchetti* did not define "recreational" or "sports" activity, the court recognized that the activity need not be organized or supervised in order to qualify but, rather, the participants could be playing under a loose set of rules informally agreed upon between themselves in their own backyards. The court reasoned that "to hold otherwise would open up the floodgates to a myriad of lawsuits involving the backyard games of children." *Id.*, 53 Ohio St.3d at 98, 559 N.E.2d at 702. The court further cited the Illinois case of *Nabozny v.*

*Barnhill* (1975), 31 Ill.App.3d 212, 215, 334 N.E.2d 258, 260, wherein the court stated:

"[T]he law should not place unreasonable burdens on the free and vigorous participation in sports by our youth." *Id.*, 53 Ohio St.3d at 99, 559 N.E.2d at 703.

In the present case, both parties testified at trial that "BB Gun War" was a game or recreational activity which they engaged in for fun. They had created their own set of rules to make the game safe and had, in fact, played the game on prior occasions with no resulting injuries. Both parties were aware of the risks involved in the game. It is clear that neither party intended to injure the other party and both parties remain friends.

Appellant's argument that this was an assault with a deadly weapon is not well taken. Appellee did not knowingly cause or attempt to cause physical harm to appellant. Both parties were aware of the harm that could be caused by an air rifle, so they took affirmative steps in adopting certain rules to ensure as much as possible that no harm would come to either participant.

■ Next, while an air rifle, under certain circumstances, could be considered a deadly weapon, it was not in the game of "BB Gun War." Similarly, a hockey stick, baseball bat, or croquet mallet could be considered deadly weapons when used to attack a person, but they are not deadly weapons in the context of the game or activity in which they are normally used because of the rules of the game which serve to protect the participants.

Moreover, in *Moavero v. Bush* (June 22, 1992), Stark App. No. CA–8760, unreported, 1992 WL 161746, the Fifth District Court of Appeals held that hunting with a shotgun was a recreational activity despite the fact that a shotgun could be considered a deadly weapon. Clearly, the focus in determining whether an activity is recreational is not on the instrument used in the activity but on the expectations of the participants. Hence, an innocent round of golf could fall outside the protected class of activities if a golfer began clubbing another golfer with a three iron.

Based upon the foregoing analysis, it is the opinion of this court that the "BB Gun War" participated in by the parties in the instant cause was a recreational activity. Therefore, appellant could only recover for his injuries if he could prove that appellee acted in a reckless manner.

■ In the case *sub judice*, it is evident that appellant's claim was one based on negligence only. It is evident that appellant's strategy at trial was also to show negligence. In opening statements, appellant's counsel stated:

"He's seeking this compensation because the activity that they were involved in is an activity which is inherently dangerous and which reasonably prudent

persons would not and should not engage in, and that's negligence to engage in that kind of conduct.

"That fact that he also engaged in this conduct does not alter the fact that the other boy was similarly engaged in this. The other boy's shooting of the weapon that produced the damage, we say that's negligence.

"It's negligence to engage in it even if you consent to engage in that kind of activity, and you're entitled to recover when you're damaged when the damage results from activity which is so inherently dangerous. That will be the evidence that we present * * *."

Appellant proceeded to introduce evidence surrounding the accident which also went towards establishing negligence.

Accordingly, once the trial court made the determination that the activity in question was "recreational," as that term is used in *Marchetti, supra*, it had no choice but to direct a verdict in appellee's favor since an injured party cannot recover damages for injuries caused by negligence during a recreational activity. Therefore, the trial court did not err in directing a verdict in appellee's favor.

Appellant's sole assignment of error is without merit.

Based on the foregoing, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., concurs in judgment only with concurring opinion.

NADER, J., concurs in judgment only.

CHRISTLEY, Presiding Judge, concurring.

I concur in judgment only, as I believe the opinion goes beyond what is necessary for a resolution of the assignment of error. Our affirmance need only concern itself with the fact that appellant only pled negligence and not reckless or intentional behavior.

*Marchetti*, the controlling case on this issue, defines a recreational or sporting activity in sweeping terms. Appellant argues, despite his pleadings, that because the object of the game was for one player to intentionally shoot the other with a BB gun, albeit below the neck or waist, it is distinguishable from *Marchetti* and the long line of cases which require more than negligence to impose liability. The appellant's gist is that, as a matter of public policy, even within the context of the rules of a recreational or sports activity, the permitted use of an inherently dangerous instrument to intentionally hit or shoot the other player within a game or sporting context is recklessness *per se* and that any resulting harm is therefore intentional.

From a standpoint of public policy, appellant's point is certainly arguable. We note that the legislature has preempted the sport of boxing for similar public policy reasons even though it does not involve the use of an inherently dangerous instrument other than fists.

However, the legislature has not chosen to speak on this specific subject. That being the case, *Marchetti* is the final word on this matter in this state. And *Marchetti* simply does not support appellant's proposition that mere negligent behavior will be actionable in recreational or sporting activities. His failure to plead reckless or intentional conduct rather than simple negligence is fatal to his cause. Thus, a directed verdict was appropriate and I concur in judgment only that appellant's assignment is without merit.