Easton ALLEN, Appellant,

v.

Monroe DONATH, Appellee.

No. 10–93–237–CV.

Court of Appeals of Texas,
Waco.

April 13, 1994.

Rehearing Denied May 11, 1994.

Stephen R. Fontaine, Sleeper Johnston Helm & Fontaine, Waco, for appellant.

Stephen G. Good, Kern & Wooley, Irving, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Easton Allen was injured when he was hit in the head by a golf ball—a "mulligan" shot by Monroe Donath. At trial, the parties disputed whether Donath announced his intention to hit a second tee shot. However, the jury failed to find that the reckless conduct of either party caused the occurrence in question. On appeal Allen contends that the trial court erred in applying the "reckless conduct" standard of care rather than the "ordinary negligence" standard of care in a non-contact sports case. Because we find Allen's complaint without merit, we will affirm the judgment.

On October 5, 1990, Easton Allen and C.D. Hatchett were playing golf at the Western Oaks Country Club in Waco. After Allen and Hatchett teed off on the first hole, Monroe Donath asked to join the twosome. The threesome completed the first hole, played the second hole, and moved to the third tee box. Donath was to shoot first from the blue pro marker. Allen and Hatchett sat in the golf cart and waited their turn near the white regulation marker, approximately fifteen to twenty feet forward of Donath. Although a row of shrubbery separated a portion of the tee box from the golf cart path, they had a clear view of Donath from the regulation marker area. Donath, a left-handed golfer, prepared to tee off with his back toward the others. After watching Donath hit his tee shot, Allen and Hatchett stopped watching Donath and moved to the rear of the cart. Allen then heard a club hit a ball, turned toward Donath, and was struck in the left temple. Allen claims that the second tee shot was hit without warning. Donath testified that he asked for and received permission to hit the second shot. Allen claimed serious injuries, including a fractured skull, a concussion, temporary loss of speech, loss of memory, loss of hearing, loss of general motor functions, and damage to his jaw.

We assume that Allen's single point of error is intended to complain that the trial court erred in overruling his objection to the charge. Before the charge was read to the jury, Allen objected to the submission of the case to the jury on the basis of a reckless disregard standard of care rather than an ordinary negligence standard of care. The trial court overruled Allen's objection and submitted a charge asking the jury whether the reckless conduct of either party caused the occurrence in question.[1]

According to Allen, the appropriate standard of care for sports law cases should be dependent upon whether the sport in ques-

---

1. In this appeal we are not called upon to address the propriety of submitting a "reckless conduct" charge under comparative responsibility principles. Therefore, we express no opinion upon the issue of whether a plaintiff's recovery for a sports tort should be reduced by either the reckless conduct or the negligence of the plaintiff. *See Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516, 520 (10th Cir.), *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979).

tion is a contact sport or a non-contact sport. On this issue, we find the reasoning of the Amarillo Court of Appeals persuasive:

> In the recent case of *Connell v. Payne*, 814 S.W.2d 486 (Tex.App.—Dallas 1991, writ denied), our sister court of appeals in Dallas was faced with determining the legal duty owed by one participant to another participant in a polo match. The court rejected the plaintiff's suggestion that the standard was one of ordinary negligence. Instead, the court held that "for a plaintiff to prevail in a cause of action for injuries sustained while participating in a *competitive contact sport*, the plaintiff must prove the defendant acted 'recklessly' or 'intentionally' as the Restatement of Torts defines those terms." *Id.* at 489 (emphasis added). While the genteel game of golf can hardly be described as a "competitive contact sport," we believe the reckless and intentional standard is every bit as appropriate to conduct on the links as it is to conduct on the polo field. In support of this proposition we cite the well-reasoned case of *Thompson v. McNeill*, [53 Ohio St.3d 102], 559 N.E.2d 705 (1990).[2]

The court in *Hathaway* held that "for a plaintiff to prevail in a cause of action against a fellow golfer, the defendant must have acted recklessly or intentionally."[3] We agree.

Allen attempts to distinguish *Hathaway* on the basis that the injury in that case was caused by a shanked ball—a foreseeable risk of golf that all golf players must accept, while the complaint in this case was that Donath took a second shot without warning—an action that was not foreseeable. This complaint was properly addressed by the charge given. The court's charge to the jury provided the following definition of "reckless conduct":

> "Reckless conduct" means that a person's conduct is in reckless disregard of the safety of himself or another if he does an act or intentionally *fails to do an act which it is his duty to do,* knowing or having reason to know of facts which would lead a

reasonable person to realize, not only that his conduct creates an "unreasonable risk" of physical harm to himself or another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

(Emphasis added).

The parties do not dispute whether Donath had a duty to warn. Donath testified that, in accordance with the custom of an informal game of golf, he requested permission to hit a second ball, and they said, "Go ahead." Allen testified that, after the first tee shot, Donath did not indicate that he intended to hit a second tee shot, or mulligan. As Allen points out in his brief, however, a factual review of the evidence is not important to a legal determination of the proper standard of care. Instead, he contends only that the breach of a golfer's duty to request permission or otherwise announce his intention to hit a second tee shot should be measured by an ordinary negligence standard of care. We find that the charge to the jury adequately submitted the question of whether Donath breached that duty by its definition of reckless conduct. Because the trial court properly applied the reckless conduct standard of care to this case, we overrule Allen's sole point of error.

We affirm the judgment.

Justice VANCE concurs.

VANCE, Justice, concurring.

According to the Ohio Supreme Court in *Thompson*, "a player who injures another player in the course of a sporting event by conduct that is a foreseeable, customary part of the sport cannot be held liable for negligence because no duty is owed to protect the victim from that conduct."[1] I find this description of the scope of the reckless conduct standard to be more practical than the distinction between contact and non-contact sports. Although golf is not a contact sport in the same sense as football, ice hockey, or polo, a golfer obviously accepts the risk of

---

**2.** *Hathaway v. Tascosa Country Club, Inc.,* 846 S.W.2d 614, 616 (Tex.App.—Amarillo 1993, no writ).

**3.** *Id.* at 617.

**1.** *Thompson v. McNeill,* 53 Ohio St.3d 102, 559 N.E.2d 705, 707 (1990).

coming in contact with wayward golf shots on the links.[2]

Traditionally, courts have barred recovery for damages resulting from injuries occurring in an athletic competition under the theory that the participants voluntarily assumed the risk of dangers inherent in that activity.[3] More recently, however, courts have held that participants in an athletic competition owe a legal duty not to injure another participant by conduct that is either deliberate, willful, or recklessly disregards the safety of the other participant.[4] Although a participant in a game or sport assumes the risk of all of the dangers incidental to that particular activity which are obvious and foreseeable, he does not assume the risk of injury from fellow players acting in an unreasonable or unsportsmanlike manner with a reckless lack of concern for the safety of others participating.[5] Recognizing the trend among state courts to allow injured athletes to recover for injuries sustained on the field, the federal court of appeals, in a Colorado case involving a professional football player who recklessly struck an opposing player in the back of the head, held that even on a football field all reason has not been abandoned.[6] To implement this rule, the assumption of the risk doctrine requires the court to determine the nature of the risks that a willing participant in an athletic competition or recreational activity assumes.

Turning to Texas jurisprudence, I first note that our Supreme Court has abolished *voluntary* assumption of the risk as a defense to actions based on negligence, except in "cases in which there is a knowing and express oral or written consent to the dangerous activity or condition."[7] The dissent in *Farley* agreed that assumption of the risk should be eliminated as a separate defense to be considered by the jury in ordinary negligence cases, but argued that there are exceptional situations where it should be retained as a device for use by the court—such as in "implied consent" cases in which there should be no recovery even though the plaintiff's conduct might be regarded as reasonable under the circumstances.[8] In *Connell v. Payne* the Dallas Court of Appeals acknowledged that, after *Farley*, the fact-finder considers the reasonableness of the injured party's conduct in confronting a known risk only as an element of contributory negligence in an ordinary negligence case.[9] Without explaining why the rule should be limited to contact sports, the court held, "A participant in a competitive contact sport *expressly consents* to and assumes the risk of the dangerous activity by voluntarily participating in the sport."[10] The Amarillo Court of Appeals in *Hathaway* extended the reasoning of *Connell* to the game of golf, although the opinion stops short of classifying it as a contact sport.[11] Instead, finding that "the risk of being inadvertently hit by a ball struck by another competitor is built into the game of golf," the court held that "for a plaintiff to prevail in a cause of action against a fellow golfer, the defendant must have acted recklessly or intentionally."[12] Subsequently, the Austin Court of Appeals declined to apply

---

**2.** *See id.* at 709.

**3.** *See, e.g., Gaspard v. Grain Dealers Mutual Insurance Co.,* 131 So.2d 831, 834 (La.Ct.App. 1961).

**4.** *See Nabozny v. Barnhill,* 31 Ill.App.3d 212, 334 N.E.2d 258, 261 (1975).

**5.** *Bourque v. Duplechin,* 331 So.2d 40, 42 (La.Ct. App.1976).

**6.** *See Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516, 521 (10th Cir.1979).

**7.** *See Farley v. M M Cattle Co.,* 529 S.W.2d 751, 758 (Tex.1975).

**8.** *Farley,* 529 S.W.2d at 760 (Walker, J., dissenting).

**9.** *Connell v. Payne,* 814 S.W.2d 486, 488 (Tex. App.—Dallas 1991, writ denied).

**10.** *Id.* at 488–89 (emphasis added) (citing *Marchetti v. Kalish,* 53 Ohio St.3d 95, 559 N.E.2d 699, 703–04 (1990) (holding that before a party may proceed with a cause of action involving injury resulting from a recreational or sports activity, reckless or intentional conduct must exist because participants assume the ordinary risks of the activity)).

**11.** *Hathaway v. Tascosa Country Club, Inc.,* 846 S.W.2d 614, 617 (Tex.App.—Amarillo 1993, no writ).

**12.** *Id.* at 616–17.

the reckless-disregard standard to a non-participant who had entrusted a parasail to the plaintiff without providing adequate supervision or instruction.[13] The Austin court held that, although the plaintiff may have consented to the possibility of the unusual dangers inherent in the activity, there was no evidence that he was aware that the parasail might have been negligently attached to the tow rope.[14]

Because "shanking" the ball is a foreseeable and not uncommon occurrence in golf, I believe that a golfer's consent to assume the risk of being struck by such a ball may be implied from the golfer's participation in the game.[15] This *implied* assumption of the risk differs from the *voluntary* assumption of the risk doctrine that has been merged into our system of comparative negligence.[16] A plaintiff who voluntarily encounters a known danger, but does not act unreasonably in doing so, cannot be found contributorily negligent.[17] Because golfers enter freely and voluntarily into the game, they are deemed to have consented to the known risk of being injured by wayward golf balls.[18] Unlike voluntary assumption of the risk, implied assumption of the risk is not an affirmative defense whereby a defendant seeks to prove that he has been relieved of the future duty to act with reasonable care. Instead, implied assumption of the risk is a useful doctrine for determining what duty the defendant owes to the plaintiff.[19] Imposing a duty on all golfers to avoid shanking the ball would place unreasonable burdens on the free and vigorous participation in the sport.[20] A golfer should not, however, be deemed to have consented to an unreasonable risk.[21] What constitutes an unreasonable risk under the circumstances must be delineated with reference to the way the particular game is played—the rules and customs that shape the participants' ideas of foreseeable risks in the course of a game.[22] By voluntarily participating in the game, Allen impliedly assumed the risk of being struck by a shanked ball, but not a second tee shot hit by Donath without warning. Thus, whether Donath recklessly failed to warn Allen that he intended to hit a second shot was the question for the jury.

In this case, there was sufficient evidence to raise a fact issue concerning whether Allen expressly consented to Donath hitting a "mulligan" from the third tee box or whether Donath was reckless in hitting the second tee shot without warning. If Allen expressly consented to the second shot, he assumed the same risk of being hit by a mulligan as he had assumed with regard to the first shot. He remained in substantially the same precarious position fifteen to twenty feet forward of Donath. Allen testified that he would have been watching Donath had he known of his intent to hit a second shot. If in fact, however, Allen did not expressly consent to the mulligan, a jury could have found Donath's conduct in hitting a second tee shot without warning to be reckless.

The broad-form submission, mandated by Rule 277, inhibits our ability to ascertain whether the jury believed (1) that Donath was not reckless, (2) that his reckless conduct was not a proximate cause of the injury, or (3) that Allen failed to meet his burden of proof.[23] The court's charge to the jury defined "negligence" in accordance with Texas

---

**13.** *Bangert v. Shaffner,* 848 S.W.2d 353, 356 (Tex. App.—Austin 1993, writ denied).

**14.** *Id.*

**15.** *See Thompson,* 559 N.E.2d at 709.

**16.** *See* Joe Greenhill, *Assumed Risk,* 20 Sw. L.J. 1, 1 n. 1 (1966).

**17.** *See* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 68, at 485 (5th ed. 1984).

**18.** *Id.* at 485–86 & n. 54.

**19.** *See Farley,* 529 S.W.2d at 760 (Walker, J., dissenting).

**20.** *See Marchetti,* 559 N.E.2d at 703.

**21.** *See* Keeton, *supra* note 17, at 485 n. 50 ("Perhaps with the exception of professional hockey, the players should not ordinarily be deemed to have consented to unsportsmanlike rule violations, not part of the game, that may recklessly or intentionally result in injury.").

**22.** *Thompson,* 559 N.E.2d at 708.

**23.** *See* Tex.R.Civ.P. 277.

Pattern Jury Charge 2.01[24] and "reckless conduct" according to Section 500 of the Restatement of Torts Second (with slight modifications to account for the "reckless conduct" of the plaintiff as well as the defendant). Section 500 of the Restatement defines "reckless disregard of safety" as follows:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.[25]

Comment g to section 500 suggests that reckless conduct differs from negligence in several important particulars:

> It differs from that form of negligence which consists in mere inadvertence, *incompetence, unskillfulness,* or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a *conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.* It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.[26]

It was undisputed at trial that shanking a ball is a foreseeable common occurrence in golf. Had the trial court submitted the charge requested by Allen—inquiring whether the negligence of either party proximately caused "the occurrence in question"—the jury, nevertheless, would have been duty-bound to consider whether the injury was proximately caused by Donath's negligence in shanking the ball. And if the jury had returned an affirmative answer to the requested negligence question submitted in broad-form, we would have been unable to ascertain whether the jury believed that Donath negligently shanked the ball—a finding which would not support recovery by Allen—or that he recklessly failed to warn Allen of his intent to hit a mulligan—a finding that would support recovery because Allen cannot be deemed to have assumed the unforeseeable risk of injury caused by such reckless conduct.

Donath owed no duty to his fellow golfers to avoid hitting the ball incompetently or unskillfully. Therefore, the court properly denied Allen's request to submit an ordinary negligence question. More importantly, the reckless conduct question properly limited the jury's deliberations to whether Allen's injury was caused by a breach of Donath's duty to warn the other players of his intent to hit a mulligan. Because I agree that the trial court properly applied the reckless conduct standard of care to this case, I concur with the holding of the majority.

---

**24.** 1 State Bar of Texas, Texas Pattern Jury Charges PJC 2.01 (1991).

**25.** Restatement (Second) of Torts § 500 (1965).

**26.** *Id.* cmt. g (emphasis added).