No. 2--08--0789     Filed:  12-31-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MICHAEL WEISBERG, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--L--697 |
| | ) | |
| CHICAGO STEEL and CODY LAMPL, | ) | Honorable |
| | ) | Stephen J. Culliton, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), plaintiff, Michael Weisberg, appeals an order from the trial court granting the motion of defendants, Chicago Steel and Cody Lampl, to dismiss pursuant to section 2--619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2--619 (West 2004)); the order dismissed counts I and II of plaintiff's four-count amended complaint. Counts I and II alleged negligence against defendants, and counts III and IV alleged willful and wanton conduct against defendants, respectively. The only issue raised on appeal is whether the trial court erred when it granted defendants' motion to dismiss with respect to counts I and II. For the reasons set forth below, we reverse and remand.

The relevant facts are not in dispute. Plaintiff was employed by Chicago Acceleration and was assigned to provide athletic training services to the Chicago Steel, an amateur hockey team part of the United Hockey League. Lampl was a player on the Steel at all relevant times herein.

Plaintiff's duties as athletic trainer included refilling water bottles for the Chicago Steel players during practice. Players on the Chicago Steel would notify plaintiff that water bottles needed to be refilled by banging a hockey stick on the locker room door, and plaintiff would proceed to the bench next to the ice rink to refill the water bottles. On October 24, 2004, the Chicago Steel was engaged in a practice at the Edge Ice Arena in Bensenville. Plaintiff was in the trainer's room working on paperwork when he heard a player banging a stick on the locker room door. As plaintiff entered the bench area to refill the water bottles, he was struck in the right eye by a hockey puck. Plaintiff suffered a fracture below his right eye and retinal tearing, which resulted in permanent vision loss.

On July 15, 2005, plaintiff filed a complaint against defendants. As amended, plaintiff's complaint alleged two counts of negligence and two counts of willful and wanton conduct against defendants. Count I of the complaint alleged that the Chicago Steel committed negligence by failing to prevent players from shooting pucks toward the bench area. Count II alleged that Lampl committed negligence by engaging in "sniping," or shooting pucks at water bottles on the bench, as plaintiff entered the bench area to refill the water bottles. Counts III and IV of the complaint alleged that the Chicago Steel and Lampl engaged in willful and wanton conduct, respectively. Defendants filed a joint motion to dismiss the negligence counts pursuant to sections 2--615 and 2--619 of the Code and to dismiss the willful and wanton counts pursuant to section 2--615 of the Code. Alternatively, defendants' motion requested that the trial court grant summary judgment in their favor with regard to counts III and IV pursuant to section 2--1005 of the Code (735 ILCS 5/2--1005 (West 2004)). On June 30, 2008, the trial court granted defendants' section 2--619 motion to dismiss with regard to the negligence claims, concluding that plaintiff's negligence claims were barred by the

contact sports exception, but denied the remainder of defendants' motion. Specifically, in rendering its order, the trial court concluded that the parties were engaged in hockey, which is a contact sport, and then held that "plaintiff was a person who, when he was injured by the hockey activity, though he was outside the boundary of the actual game that is the actual ice, he was, as a matter of law *** within an area naturally encompassed by the game, namely the bench area *** and the contact sports rule applies. " On plaintiff's motion, the trial court amended its order on July 24, 2008, to include language pursuant to Rule 304(a) (210 Ill. 2d R. 304(a)) with respect to the dismissed counts. Plaintiff timely appeals.

A section 2--619 motion to dismiss admits the legal sufficiency of the complaint, but raises defects, defenses, or other affirmative matter appearing on the face of the complaint or established by external submissions that defeat the action. Jenkins v. Concorde Acceptance Corp., 345 Ill. App. 3d 669, 674 (2003). When considering whether an action should be dismissed pursuant to section 2--619, all well-pleaded facts in the complaint are admitted together with all reasonable inferences that can be drawn from those facts in the plaintiff's favor. LaSalle Bank National Ass'n v. Village of Bull Valley, 355 Ill. App. 3d 629, 634-35 (2005), citing Redwood v. Lierman, 331 Ill. App. 3d 1073, 1076-77 (2002). In deciding the merits of a section 2--619 motion, the trial court may not determine disputed factual issues without an evidentiary hearing. LaSalle Bank National Ass'n, 355 Ill. App. 3d at 635, citing Timberline, Inc. v. Towne, 225 Ill. App. 3d 433, 439 (1992). Where a cause of action is dismissed under a section 2--619 motion, the question on appeal is whether a genuine issue of material fact exists and whether the defendant is entitled to a judgment as a matter of law. LaSalle Bank National Ass'n, 355 Ill. App. 3d at 635, citing Nowak v. St. Rita High School,

197 Ill. 2d 381, 389 (2001). We review de novo a trial court's ruling on a section 2--619 motion to dismiss. LaSalle Bank National Ass'n, 355 Ill. App. 3d at 635, citing Nowak, 197 Ill. 2d at 389.

On appeal, plaintiff contends that the trial court erred in dismissing counts I and II of the complaint pursuant to section 2--619 of the Code. In support of this contention, plaintiff argues that the contact sports exception is not applicable and defendants should be held liable for negligent conduct because plaintiff was not a participant in a contact sport, but rather, an athletic trainer providing training services. In the alternative, plaintiff argues that, even if he is considered a participant in a contact sport, the contact sports exception does not apply, because sniping involves conduct that was "totally outside the range of ordinary activities associated with ice hockey."

The contact sports exception is a judicially created exception to ordinary negligence claims, which provides that voluntary participants in a contact sport may be held liable for injuries to coparticipants caused by willful and wanton or intentional conduct, but not for injuries caused by ordinary negligence. Azzano v. Catholic Bishop, 304 Ill. App. 3d 713, 716 (1999), citing Nabozny v. Barnhill, 31 Ill. App. 3d 212, 215 (1975). In creating the contact sports exception, the court in Nabozny stated that its underlying purpose was to ensure that the law did not place unreasonable burdens on the free and vigorous participation in sports by our youth, and therefore the exception was "carefully drawn" to control a new field of personal injury litigation. Nabozny, 31 Ill. App. 3d at 215. By allowing recovery for injuries resulting from willful and wanton and intentional misconduct, but not ordinary negligence, the contact sports exception takes into account the voluntary nature of participation in games where physical contact is anticipated and where the risk of injury caused by the contact is inherent. Pfister v. Shusta, 167 Ill. 2d 417, 427 (1995). Thus, as our supreme court held, the "contact sports exception strikes an appropriate balance between

society's interest in limiting liability for injuries resulting from physical contact inherent in a contact sport and society's interest in allowing recovery for injuries resulting from willful and wanton or intentional misconduct by participants." Pfister, 167 Ill. 2d at 426. Since the inception of the contact sports exception, Nabozny and its progeny have clarified what constitutes a contact sport for the contact sports exception to apply. Compare Keller v. Mols, 156 Ill. App. 3d 235, 237 (1987) (holding that an informal game of floor hockey is a contact sport), with Novak v. Virene, 224 Ill. App. 3d 317, 320-21 (1991) (holding that downhill skiing is not a contact sport). These cases clearly provide that the court must consider the objective factors surrounding the game itself and not the subjective expectations of the parties. Karas v. Strevell, 227 Ill. 2d 440, 454 (2008), citing Landrum v. Gonzalez, 257 Ill. App. 3d 942, 947 (1994).

However, whether the contact sports exception is applicable to a plaintiff who was not actively partaking in a contact sport is less clear. In Karas, our supreme court addressed whether the contact sports exception was applicable to organizational defendants. The plaintiff in Karas was a participant in a high school hockey game who was checked from behind in violation of league rules and commenced a lawsuit against other players and various organizational defendants, including the hockey league, for injuries that allegedly resulted from the check from behind. Karas, 227 Ill. 2d at 443-45. The allegations against the organizational defendants alleged that they failed to adequately enforce the rules against checking from behind. Karas, 227 Ill. 2d at 445. In considering whether the contact sports exception applied to the organizational defendants, our supreme court relied on the California Supreme Court decision in Kahn v. East Side Union High School District, 31 Cal. 4th 990, 75 P.3d 30, 4 Cal. Rptr. 3d 103 (2003). In Kahn, the California Supreme Court held that the contact sports exception applied to a sports instructor or coach whose alleged liability was based on

the claim that he or she failed to adequately instruct a player or challenge a player to perform above his or her capabilities. Kahn, 31 Cal. 4th at 996, 75 P.3d at 32-33, 4 Cal. Rptr. 3d at 106. Relying on Kahn, our supreme court in Karas concluded that whether the contact sports exception applied to a nonparticipant defendant was a policy determination that rested on the circumstances of the sport and its inherent risk, the relationship of the parties to the sport and to each other, and whether imposing broader liability on the defendant " 'would harm the sport or cause it to be changed or abandoned.' " Karas, 227 Ill. 2d at 465, quoting Kahn, 31 Cal. 4th at 1006, 75 P.3d at 39, 4 Cal. Rptr. 3d at 115. The Karas court held that the contact sports exception applied to the organizational defendants because imposing too strict a standard of liability on those defendants for failing to adequately enforce rules would have a chilling effect on the vigorous participation in the sport of hockey and would open the door to a surfeit of litigation. Karas, 227 Ill. 2d at 464.

Although the decisions in Karas and Kahn are factually distinguishable, their underlying rationale is applicable to the present case in deciding whether plaintiff was a participant subject to the contact sports exception. We conclude that permitting plaintiff to maintain a cause of action against defendants based on ordinary negligence would not violate the spirit and purpose of the contact sports exception. Our determination rests on the alleged circumstances of plaintiff's injury, the relationship of the parties to each other and the sport of hockey, and whether allowing plaintiff to bring a cause of action premised on ordinary negligence would harm the sport of hockey or cause it to be changed. See Karas, 227 Ill. 2d at 465. With respect to the circumstances of plaintiff's injury as alleged in plaintiff's amended complaint, which we must accept as true for the purposes of a section 2--619 motion to dismiss (see LaSalle Bank National Ass'n, 355 Ill. App. 3d at 634), this is not a scenario in which the contact sports exception has typically been applied. For example, the

plaintiff in Karas brought a lawsuit as a result of injuries he suffered while he was playing in a hockey game (Karas, 227 Ill. 2d at 444), and the plaintiff in Kahn was a member of a high school swim team who was injured while partaking in the sport of swimming (Kahn, 31 Cal. 4th at 997, 75 P.3d at 33, 4 Cal. Rptr. 3d at 107). Conversely, here, plaintiff was not a player for the Chicago Steel, not otherwise affiliated with the Chicago Steel, and not otherwise partaking in the sport of hockey or the game of sniping that allegedly occurred on October 24, 2004. Rather, he was a trainer employed by an independent company providing training services to the Chicago Steel and was only in the vicinity of the hockey rink during practice to replace water bottles, which was required of him pursuant to his job responsibilities. Therefore, this is not a situation that requires us to take into account the voluntary nature of plaintiff's "participation in games where physical contact is anticipated and where the risk of injury caused by this contact is inherent." See Pfister, 167 Ill. 2d 417.

Further, unlike the organizational defendants in Karas and the swim-coach defendant in Kahn, plaintiff's relationship with defendants here and the sport of hockey was attenuated. In Karas, the court determined that the contact sports exception should apply to the organizational defendants, and therefore they could not be liable for ordinary negligence, in part because enforcing rules and making officiating decisions involve subjective decision making that takes place during a fast-paced game and is prone to second-guessing. Karas, 227 Ill. 2d at 440. Likewise, the court in Kahn held that the contact sports exception should be invoked for the swim-coach defendant because a significant part of an instructor's role is to challenge the athlete to perform better. Kahn, 31 Cal. 4th at 996, 75 P.3d at 32, 4 Cal. Rptr. 3d at 106. The emphasis placed on the defendants' relationship to the sport and to the participants in both Karas and Kahn strongly suggests that an important factor

in determining if the contact sports exception should be invoked is whether the parties bore a significant relationship to each other and the sport being played. Based on the facts alleged here, we conclude that plaintiff, as a trainer employed by an independent training company that contracted to provide training services to the arena, and who was not otherwise engaging in conduct inherent in the sport of hockey, did not bear a significant relationship to either the sport of hockey or the participants to the extent that the contact sports exception should be invoked as a matter of policy. Therefore, the trial court's conclusion that the contact sports exception applied because plaintiff was within an area naturally encompassed by the sport of hockey was erroneous, as its ruling was not premised on the policy considerations put forth by our supreme court in Karas. See Karas, 227 Ill. 2d at 465.

Moreover, concluding that defendants could be liable for negligence based on the conduct alleged will not have a chilling effect on vigorous participation in the sport of hockey. The amended complaint alleged that Lampl had set up water bottles on the bench wall and was shooting pucks at those bottles. The amended complaint further alleged that the Chicago Steel had failed to stop players shooting pucks at water bottles in the bench area. Unlike body checking, shooting pucks at water bottles located in the bench area, as opposed to shooting pucks at a goal or at other targets within the ice rink, is not an inherent part of the sport of hockey. See generally Karas, 227 Ill. 2d at 456-57 (stating that body checking is an inherent part of hockey). Therefore, establishing liability against a person who engaged in sniping at water bottles in the bench area will not change the game of hockey as we commonly know it to be played.

Finally, our determination that plaintiff can maintain a cause of action against defendants premised on ordinary negligence is consistent with the spirit and purpose for which the contact sports

exception was created. The reviewing court in Nabozny created the contact sports exception as a result of an injury a goalie in a soccer match sustained from another player in that match. Nabozny, 31 Ill. App. 3d at 213-14. The court considered the policy implications of imposing ordinary negligence liability and reasoned that, although the law should not impose burdens on the free and vigorous participation in sports by our youth, "some of the restraints of civilization must accompany [an] athlete on to the playing field." Nabozny, 31 Ill. App. 3d at 215. The court held that it had "carefully drawn" an exception that provides that a player should be liable for conduct that was willful or wanton or demonstrated a reckless disregard for the safety of another player. Nabozny, 31 Ill. App. 3d at 215. Under the facts presented in this case, however, extending the contact sports exception to prevent a trainer, who was providing training services to anyone who used the ice arena and not the hockey team specifically, and who suffered injuries as a result of alleged conduct that was not inherent to the sport of hockey, would extend the contact sports exception beyond the rationales for which it was originally intended--to avoid placing an unreasonable burden on vigorous participation in sports by our youth and to control a new type of litigation. Accordingly, we therefore hold that the trial court erred when it dismissed counts I and II of plaintiff's amended complaint.

For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded.

BOWMAN and BURKE, JJ., concur.